## Traders' Insurance Company v. Thomas D. Catlin.

## National Fire Insurance Company v. Same.

1. INSURANCE—*Provisions Which Avoid the Policy.*—Provisions in insurance policies, with reference to what shall avoid a recovery in event of loss, are construed most strongly against the insurers.

2. SAME—*Unauthorized Use, Suspends the Policy.*—The temporary unauthorized use of property insured does not vitiate, but only suspends the operation of the policy, and that when such use ceases the policy revives.

3. EXPERT TESTIMONY—*Increase of Insurance Risk.*—A person having ordinary intelligence can testify as to whether an unauthorized use of property by an insured, increased the risk under conditions existing at the time of a fire, as well as an expert witness.

**Assumpsit**, on a policy of insurance. Appeal from the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Heard in this court at the December term, 1894. Affirmed. Opinion filed May 28, 1895.

Collins, Goodrich, Darrow & Vincent and Thomas Bates, attorneys for appellants.

Snow & Hinebaugh, attorneys for appellee.

Mr. Presiding Justice Lacey delivered the opinion of the Court.

In 1889 Timothy L. Miller was the owner and occupant of a stock farm consisting of 540 acres, situated near Beecher, in Will county, Illinois. On the above named date he applied to the Traders' Insurance Company and the National Fire Insurance Company for insurance, among other, on the following property, to wit: $160 on boiler and engine, machinery, shafting, belting and connectings; $160 on a frame granary with a shingle roof, situated about 150 feet from above described carriage house, referring to a building which was not destroyed and is not in controversy here; also $2,600 on the frame hay and stock barn with gravel roof including basement and foundation, situated about 140 feet from the above described granary, all situated on stock farm on section 16, in a certain town and range described, in Will county, Illinois; permission granted to make repairs and alterations; and there was no written application by Miller for the policies for the insurance. Some time between January, 1889, the date of the issuance of the first policy, and February 3, 1893, Thomas Catlin, the appellee, took out similar policies in both companies, to wit, February 2, 1893, running five years. On the 14th day of September, 1893, the property insured was wholly destroyed by fire, originating in the northeast corner of the barn, and the granary and other insured property was totally destroyed by fire. The cause of the fire was unknown. Suits were brought on the said respective policies against the said appellants severally in the Circuit Court, and the two cases were consolidated and tried by agreement as one. The court tried the cases without a jury, it being

waived, and found against each company the sum of
$3,014.08. The defense set up to the causes of action by
the appellants was the alleged reason of the appellee violat-
ing certain conditions of the policies by establishing fixtures
and using certain materials prohibited by the policies. The
policy of the National Fire Insurance Company provided
among other things that " if the hazard be increased by any
means within the control of the insured, or if gasoline, pe-
troleum or any of its products are deposited, used or kept,
or burning gas is made, generated or carbureted within the
building or contiguous thereto, then the policy should be
void in every instance, unless consent is indorsed by the
company hereon." The Traders' Insurance Company had
similar provisions with an additional provision " that the
generating or evaporting within the building or within 100
feet thereof of any substance for burning gas or the use of
gasoline for lighting or fuel is prohibited unless permitted
in writing hereon." After the policies in question had been
issued in January, 1893, to Miller, he conceived the idea of
planting a large part of his farm in corn and establishing a
canning factory in the building insured as a frame hay and
stock barn. He carried his ideas into execution, and while
he continued to use part of the building as a hay and stock
barn he erected a canning factory in the other part with the·
capacity of 25,000 cans of corn per day of ten hours. He
put the necessary machinery in the building for the carrying
out of the process of canning with the necessary belting to
operate them.

At the time of the fire there had been placed between the
granary and barn, seventy-two feet from each, buried some
five feet under ground, an iron tank holding five gallons of
gasoline with the capacity of five barrels. In the south-
west corner of the barn there was placed a canning machine
made of iron and steel and connected with the gasoline tank
by means of a pipe, and by means of a fan operated by the
machinery in the granary, air was forced through this pipe
into the tank, thereby generating a gas which passed
through another pipe to the connecting machine into

six several gas jets to be ignited for soldering purposes when canning corn; the canning machinery had been operated some ten days canning corn, and then work was suspended and had been for five days when the building and its contents were consumed by fire.

The warranty in question is what is termed in law a promissory warranty. The evidence in the case tended to show that while the canning machinery was in operation, the risk was increased and the building more exposed to fire; it also tended to show that while it was not in operation the risk and hazard was not increased. This, though, was a disputed point; but we think clearly the evidence justified the finding of the court, that when the canning machine was idle there was no increase of risk. The court was justified in finding for the appellee on that issue of fact. The question is then presented whether the policy was void under such circumstances, and whether the policy being void while the risk continued, it would not attach again when there was no additional risk, even though the provisions of the policy had been violated without consent of the insurer. We think that the risk would again attach and did attach when the machine for canning was not in operation. The contrary doctrine is undoubtedly held in some of the States, notably in New York, but in this State it has been clearly holden in several cases by the Supreme Court, that the policy is revived when the additional risk ceases, after being rendered void by violations of its provisions by the insured by increasing the risk. New England Fire Insurance Company v. Whitemore et al., 32 Ill. 244; Schmidt v. Peoria F. & M. Ins. Co., 41 Ill. 295; Ins. Co. of N. A. et al. v. McDowell et al., 50 Ill. 120; Insurance Co. of North America v. Garland, 108 Ill. 220.

Attorneys for appellants point out that the insurance policy in the Whitemore case, *supra*, had the following provisions in it: "So long as the same shall be appropriated, applied or used, these presents shall cease and be of no force and effect," referring to the increased hazard provision. It seems that there may have been a distinction in that case

overlooked by the Supreme Court; but in all the other cases there was no such proviso, and the Whitemore case was referred to as authority for the holding of the Supreme Court in all the cases following the first one. We can not think that this matter has been entirely overlooked by the Supreme Court, and we must believe that in all the subsequent cases holding to the same doctrine it must have been regarded as unimportant by the court; at any rate we regard the doctrine too well established to be disregarded by this court. We also think the doctrine an equitable one and conducive to justice. Counsel for appellant complains that certain so-called expert testimony offered by appellant on the trial tending to show that the canning fixtures and appliances would increase the risk and hazard, was improperly rejected by the court. We find no holding by the court excluding the expert testimony, and we observe that the opinion of the judge filed in the record is no part of the bill of exceptions and no part of the record. We think, however, the hypothetical questions propounded by counsel on the trial to those witnesses were not directed to the proper questions of the increased risk. The testimony should have been confined to the time of the fire, as to whether the risk was increased at that time. The ventilation of the barn, the character of the machinery, and the fact that it was not running at the time, that there was no fire in the barn, and that no gas escaped to the barn from this gasoline tank, should have been presented to the witnesses hypothetically as surrounding conditions. We think, however, that an ordinary witness having ordinary intelligence could testify as to whether there was any increased risk under conditions existing at the time of the fire as well as any expert witness.

Finding no error in the record the judgment of the court below is affirmed against each of the appellants.