### THE AMERICAN STRAWBOARD COMPANY

*v.*

### THE CHICAGO AND ALTON RAILROAD COMPANY.

*Opinion filed December 21, 1898—Rehearing denied February 9, 1899.*

1. RAILROADS—*in an action for fire by locomotives the ownership of the land is not important.* A paper mill company which has stacked its straw in a certain place for many years and before a switch track was put in adjacent to the place is the occupant of the land, and entitled to the benefit of the statute concerning fires by locomotives without regard to the ownership of the fee.

2. SAME—*if communication of fire is proved, the burden is on company to disprove negligence.* If the fact of the communication of the fire by defendant's engine is proved or admitted, the burden is upon the defendant to overcome the statutory presumption of negligence arising from that fact, by showing that the engine was properly equipped to arrest sparks, and that it was in good order and skillfully managed.

3. SAME—*stacking straw near switch track not such contributory negligence as bars recovery for fire.* Stacking straw in a certain place according to a custom of long standing, beginning before a railroad company put a switch track in near the stack yard, is not in itself such contributory negligence as bars a recovery for damages from a fire set by a switch engine; nor does such fact justify an instruction imposing the burden on the plaintiff of proving it was not guilty of negligence or carelessness.

4. SAME—*use of engine does not determine sufficiency of spark-arrester.* An instruction for the defendant in an action for fire caused by a switch engine, that its duty was to have its engines equipped with the most approved appliances to prevent the escape of sparks "in the particular use to which such engines are put," is misleading, as implying that a spark-arrester might lawfully be used upon a switch engine which would be insufficient for a road engine.

5. INSTRUCTIONS—*an instruction is prejudicial if misleading as applied to the facts.* An instruction is prejudicial, in a case where the evidence is close, if it is incorrect and misleading when applied to the facts in controversy.

6. SAME—*a correct instruction does not cure error in another.* A correct instruction does not cure the error in another, unless, as a series, the instructions state the law correctly.

PHILLIPS, J., dissenting.

*American Strawboard Co.* v. *C. & A. R. R. Co.* 75 Ill. App. 420, reversed.

| | |
|---|---|
| 177 | 513 |
| 83a | 48 |
| 177 | 513 |
| s91a | 637 |
| 177 | 513 |
| 92a | 6319 |
| 177 | 513 |
| f93a | 6102 |
| 177 | 513 |
| s190 | 269 |
| 177 | 513 |
| 100a | 3533 |
| 177 | 513 |
| 202 | 4142 |
| 104a | 3618 |
| 105a | 2 68 |

APPEAL from the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Will county; the Hon. CHARLES BLANCHARD, Judge, presiding.

HILL, HAVEN & HILL, (JONES & LUSK, of counsel,) for appellant.

GEORGE S. HOUSE, for appellee.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

Appellant brought its action on the case in the circuit court of Will county, against appellee, to recover damages for the destruction by fire of 3476 tons of baled straw and a straw-stacker. The substance of the charge in the different counts of the declaration was, that by the negligence of appellee in the construction and operation of its locomotive engine, sparks and brands of fire were thrown by it to and upon the stacks of straw of the appellant standing near appellee's switch track, thereby igniting and destroying the same and the said stacker, while appellant was in the exercise of due care for the safety of its said property from fire. Some of the counts allege that the stacks of straw were on the close of the plaintiff adjacent to defendant's said switch tracks. Judgment was rendered upon the verdict of the jury for defendant, and the Appellate Court has affirmed that judgment and settled against the plaintiff all controverted questions of fact, and on this appeal the appellant insists upon no error except in giving and refusing to give instructions to the jury.

To properly determine the correctness of the rulings of the trial court in the respect mentioned it has been necessary to examine the evidence, and it is apparent to us that it was of such a character as to require clearness and accuracy in the charge to the jury to prevent the jury from being misled in applying the law to the facts of the

case. There was little or no controversy over the alleged fact that the fire was set by a spark or cinder emitted by appellee's engine while switching and drawing cars on its switch track about thirty feet away from the nearest straw stack, but the real controversies of fact were, whether or not appellee, at the time of the accident, had upon its engine, and in proper order, the best and most approved appliances to prevent the escape of fire, and operated and managed its said engine in a proper and skillful manner to avoid that danger, and whether or not appellant was guilty of contributory negligence in building its straw stacks so near to appellee's switch tracks.

In its brief and argument in this court appellee thus states its defense: "Two separate, distinct and independent defenses are set up and relied upon to defeat and bar a recovery, either one of which, if sustained, would effect such result: First, that the engine was at the time equipped with the best well-known and approved appliance for arresting sparks, the engine and such appliance in good and complete repair, and the engine operated and managed carefully and skillfully by a competent and prudent engineer and fireman; second, that appellant, in locating and building up its straw stacks where it did, with full knowledge of all the circumstances and surroundings, was chargeable with contributory negligence to such an extent as precluded all right of recovery."

Appellant contends, in the first place, that the trial court erred in refusing its offered instruction directing the jury to find a verdict in its favor. It is clear from the evidence relating to the first branch of appellee's defense, as above quoted, that it would have been error to so instruct the jury, inasmuch as there was evidence upon the one side tending to prove that the said engine was so properly equipped and managed, and upon the other tending to prove the negative of this proposition. Whatever view we might entertain of the sufficiency of the evidence, as a matter of law, upon which to base a find-

ing for the defendant upon other branches of the case, it is very clear that the court would not have been authorized to take this issue of fact from the jury. The volume of evidence bearing upon this question was large, and will not be rehearsed or discussed here.

It is next urged by appellant that it was error to refuse the following instruction:

"The court instructs the jury that possession of real estate is *prima facie* evidence of ownership, especially where such possession has been exclusive and long continued; and if the jury believe, from the evidence in this case, that the ground where the straw stacks stood at the time of the fire then was and for some years had been in the actual and exclusive possession of the plaintiff, and that during all that time the plaintiff exercised acts of ownership over and upon the same, then such possession was and is *prima facie* evidence of ownership in the plaintiff of the property upon which the straw was stacked at the time of the fire."

In order to understand the bearing of this instruction it will be necessary to state some of the evidence. There was evidence showing that a part of the straw destroyed by the fire was stacked on ground platted as Daviess street, in the village of Lockport, and that the fire originated in such part. It was also shown that such part of the street and the adjoining premises of appellant had been used for the stacking of straw by the operators of the paper mill for a period of about twenty-three years, and that the street had not been traveled on that particular part, but that the line of travel had been to the east of the platted street, the contention of the parties apparently being over the right of appellant to stack its straw where the stack which first took fire was located. It was not contended that the straw was on any part of the right of way of appellee's road or switch, and the real question was whether appellant used the property in the same manner, or permitted the same to be used or remain

in the condition it would have remained in or been used, had no railroad passed near it.

The provision of the statute bearing upon this and other branches of the case is as follows: "That in all actions against any person or incorporated company for the recovery of damages on account of any injury to any property, whether real or personal, occasioned by fire communicated by any locomotive engine while upon or passing along any railroad in this State, the fact that such fire was so communicated shall be taken as full *prima facie* evidence to charge with negligence the corporation or person or persons who shall, at the time of such injury by fire, be in the use and occupation of such railroad, either as owners, lessees or mortgagees, and also those who shall at such time have the care and management of such engine; and it shall not, in any case, be considered as negligence on the part of the owner or occupant of the property injured that he has used the same in the manner or permitted the same to be used or remain in the condition it would have been used or remained had no railroad passed through or near the property so injured, except in cases of injury to personal property which shall be at the time upon the property occupied by such railroad." (Rev. Stat. 1874, p. 814.)

We are of the opinion that it was not important to the issue to determine whether or not appellant was the owner of the land where the stacks were located. It was the owner of the straw, and the occupant, exclusively, of the land, and, as the record discloses, it was, and its grantors had been, in possession of the land and stacked straw there for many years previously and before the switch track was laid; that it was stacked there as being the most convenient place for the uses of appellant in connection with the operation of its paper mill. If, therefore, the statute applies to such a case, then such occupation and use were sufficient with or without title. Besides, the purpose of this instruction, so far as pertinent to the

issue, was covered by another given at plaintiff's request, as follows:

"If the jury believe, from the evidence in this case, that the fire which destroyed plaintiff's straw and straw-stacker was communicated to one of the stacks by a spark of fire from locomotive engine 208, and that such *prima facie* evidence of negligence on the part of the defendant has not been rebutted or overcome by the other evidence in the case; and if the jury further believe, from the evidence, that the ground then occupied by said straw and straw-stacker had been for some years used and occupied by the plaintiff for stacking straw, then, so far as the plaintiff's right of recovery in this case is concerned, it is a matter of no importance where the property so destroyed was located at the time of the fire, provided it was not upon the railroad right of way,—that is to say, it was and is a matter of no importance in this case that the property so destroyed stood, at the time of the fire, partly on ground platted as Daviess street, and the case should be decided by the jury precisely as though it did not stand partly upon ground so platted."

It is next urged that the court erred in giving the following instructions to the jury at the request of the defendant:

16. "The jury are further instructed, that while in this State railroad companies have the right to employ fire to generate steam as a motive power for the purpose of operating their roads, the law imposes upon railroad companies, in the exercise of this right, the duty of maintaining their engines in good repair and working order, manned and operated by employees competent and skillful, equipped and supplied with the best known and most approved appliances in common use for arresting the escape of sparks therefrom in the particular use to which such engines are put, and to operate their said engines in such use in a prudent and careful manner, in order to avoid injury to the property of others by the escape of

fire from such engines; and when the railroad company has exercised due diligence and is without fault in the several respects named, and a fire occurs from a spark which did escape from the engine of the railroad company while standing or passing along on its railroad track, entailing a loss to another, such loss must fall on the owner.

17. "The jury are further instructed, that in this action the burden of proof is upon the plaintiff to show, not only that the defendant was guilty of negligence, but that it, the plaintiff itself, was not guilty of negligence or carelessness."

We consider first No. 17. Generally speaking, in an action on the case for negligence such an instruction would be unobjectionable, except subject to criticism in not confining the negligence mentioned to the cause of the injury. But we have no doubt that in the case at bar it was for other reasons calculated to mislead the jury and was highly injurious to the plaintiff. It is not contended here that it was questioned before the jury that the fire was set out by appellee's engine. The pivotal points, as the case was presented to the jury by the evidence, were: First, the kind, quality and condition of the spark-arrester with which the engine was equipped, and the care used in running the engine at the time and place mentioned; and second, the right of appellant to stack its straw in the alleged street, and appellant's care, or lack of care, in stacking it so near the switch track. Appellee's counsel does not defend this instruction on the ground that the burden of proof was on the plaintiff to prove that the fire was communicated by the engine, for that fact is not controverted; and it must be conceded that if the statute is applicable to the case,—and we must hold that it is,—then, when it is proved or admitted that the fire was so communicated, that is full *prima facie* evidence to charge the defendant with negligence, and the burden was on the defendant to avoid the effect of

such presumed negligence by proving that the engine was at the time equipped with the best and most approved appliances to prevent the escape of fire and that the same was in good repair and the engine properly and carefully managed. (*Chicago and Alton Railroad Co.* v. *Quaintance*, 58 Ill. 389; *Toledo, Wabash and Western Railway Co.* v. *Larmon*, 67 id. 68; *Chicago and Eastern Illinois Railroad Co.* v. *Goyette*, 133 id. 21.) When proved or admitted that the engine set out the fire, and when proved or admitted that the engine was so equipped as required, was in good repair and carefully and skillfully managed, and the railroad company has failed in no duty, then the owner, whether in the exercise of due care for the safety of his property or not, must suffer the loss, for the company is engaged in its lawful business in a lawful way and without negligence, and the loss is *damnum absque injuria;* hence the suggestion of appellant that negligence is no longer the gist of the action is incorrect. The statute has in that respect done no more than to prescribe a rule of evidence. That rule of evidence, in its application to the real controversy of fact in this case, placed the burden of proof on defendant,—that is, the loss having occurred by fire which it set out, to prove that it had observed all of the requirements to equip, keep in good order and to manage with skill and care its locomotive engine. To instruct the jury, then, as was done in this case, that "in this action the burden of proof is upon the plaintiff to show * * * that the defendant was guilty of negligence," was injuriously misleading, for such burden extended no further than the setting out of the fire, and as there was no serious controversy over that fact, the jury would most probably understand the court to mean that the plaintiff must prove, by a preponderance of the evidence, that the company was guilty of negligence in not properly equipping, repairing or managing its engine. It does not follow that such an instruction would have been erroneous or misleading in a case where there is any

serious question whether the *prima facie* case required by
the statute to be shown by the plaintiff has been proved
or not, and the court has in other instructions properly
instructed the jury. It is sufficient to show error, and,
especially in a case close on the evidence, that the in-
struction was incorrect and misleading when applied to
the facts in controversy.

Upon grounds supported in part by a similar line of
reasoning, the remaining branch of the instruction must
also be regarded as misleading and erroneous, namely,
that the burden was upon the plaintiff to show "that it,
the plaintiff, was not guilty of negligence or careless-
ness." The plaintiff alleged that it exercised due care
for the safety of its property, and properly undertook
to support this allegation by such proof of ordinary care
on its part as the nature of the case appeared to admit
of, but it was not bound to anticipate and meet particular
facts which might tend to show contributory negligence.
The plaintiff adduced evidence that it kept barrels filled
with water near its straw stacks, and two lines of rubber
hose attached to pumps used to draw water, for the ex·
tinguishment of fires, and gave evidence tending to prove
diligence in the use of such hose and pumps to extinguish
the fire in question as soon as it was discovered. It is not
our province to consider the sufficiency of this proof as
a question of fact, but the appellee makes no point upon
it as a controverted question, but defends the branch of
the instruction under consideration solely on the ground
that in locating and building up its straw stacks where
it did, with full knowledge of all the circumstances, ap-
pellant was chargeable with contributory negligence to
such an extent as precluded all right of recovery. No
other ground of contributory negligence or lack of care
by the plaintiff is mentioned, and if that was the question
of fact relied upon as showing contributory negligence,
and upon which the instruction was based, it was clearly
erroneous. It is said by Judge Elliott in his work on

Railroads (vol. 3, sec. 1236): "Where there is a statute changing the burden of proof, the defense of contributory negligence on the part of the owner is not defeated. The acts on the part of the property owner which determine whether or not he is guilty of contributory negligence naturally divide themselves into two classes: First, those things which he does or omits to do antecedent to the setting of the fire; and second, those things which he does or omits to do after the setting of the fire. * * * Where a person owns lands adjoining the right of way of a railway company he has a right to presume that the railway company will not be guilty of negligence, and he is not bound to remove dry and combustible material from his land in anticipation of probable negligence on the part of the company. He has a right to use his property in the ordinary and usual way, and so long as he does so he will not be deemed guilty of contributory negligence." (See, also, *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Stephens*, 173 Ill. 430.) And, as has been seen, the statute provides that the use of the property in the same manner in which it would have been used had no railroad been located there shall not be considered negligence. The evidence showed, without dispute, that this land had been used in the same manner for many years and before the switch track was laid. It might well be that such a use of the land was indispensable to the operation of appellant's paper mill and the carrying on of its business where it was located. Surely, appellee cannot compel appellant to move, or suspend its business, on pain of the surrender of its legal right to hold appellee liable to respond in damages for property destroyed by appellee's negligence. No hardship is cast upon the railroad company, for it may relieve itself from liability by observing all requirements in the equipment, repair and management of its engines, and appellant must assume the increased risk of proximity of the dangerous element of fire, which, as the evidence shows and

experience teaches, may escape and destroy property notwithstanding the utmost care of the railroad company. It would have been manifest error had the court instructed the jury that the burden of proof was on the plaintiff to prove that in so stacking its straw in close proximity to the defendant's switch track it was not guilty of negligence or carelessness, yet the instruction in substance amounted to this, for it is not claimed that the plaintiff was negligent in any other respect. True, the court instructed the jury, at the request of the plaintiff, that it was not negligence for the plaintiff to use its property in the same manner it would have been used had the railroad not been located there; but a correct instruction does not necessarily cure the error in another instruction, unless as a series they state the law correctly. *Toledo, Wabash and Western Railway Co.* v. *Larmon,* 67 Ill. 68; *Wabash Railway Co.* v. *Henks,* 91 id. 406; *Wabash, St. Louis and Pacific Railway Co.* v. *Rector,* 104 id. 296; *Gorrell* v. *Payson,* 170 id. 213.

We will next consider the error assigned in giving to the jury the sixteenth instruction, above set out. The objection is, that it improperly stated the duty of the railroad company to be to have its engines "equipped and supplied with the best known and most approved appliances in common use for arresting the escape of sparks therefrom *in the particular use to which such engines are put.*" It is urged that the italicized clause is an erroneous qualification of the duty of the company, and in this view we concur. No authority is cited by appellee, and we know of none, to sustain it. It is defended on the ground that the clause in question does not qualify or limit the duty of the railroad company so as to permit a less safe or effective appliance to prevent the escape of sparks to be used in switching than is required in drawing trains upon the main lines of the road, but that, as applied to this case, it means that it is the duty of the company to use appliances which are the best and most approved for

the purpose of arresting sparks and preventing their escape from engines engaged in switching. This we regard as a construction which the jury would not be likely to give it, but would understand it to mean that the law might be complied with and the company's duty be discharged by the use of a spark-arrester upon its switch engine which might be insufficient upon its other engines. The engine in question was equipped with what is called the "diamond stack," and it was a controverted question on the trial whether it or what is known as the "extension front," was the best and most approved appliance to prevent the escape of fire; but there was no evidence before the jury that particular uses to which locomotive engines are put have any effect in determining what are the best and most approved appliances to prevent the escape of fire. So, even if the instruction were otherwise unobjectionable, there was no evidence on which to base the qualifying clause complained of. By the instruction so qualified the jury were left to their own unaided speculations as to what appliances were best and most approved for switch engines, and might naturally conclude that those "in common use" were of an inferior grade and that this use was a sufficient compliance with the law. But the law makes no such distinction. Switch engines often necessarily pass very near valuable property of different kinds of a highly inflammable character, and a high degree of care and skill is required to prevent the escape of fire and the consequent destruction of such property. We think the instruction as given was erroneous and calculated to mislead the jury.

For the errors indicated the judgments of the Appellate and circuit courts are reversed and the cause is remanded to the circuit court for further proceedings.

*Reversed and remanded.*

Mr. JUSTICE PHILLIPS, dissenting.