## Thomas D. Catlin v. The Traders Ins. Co.

1. EXPERT TESTIMONY—*Competency.*—For the purpose of determining whether the circumstances connected with the presence of canning machinery and its attachments materially increases the danger of fire, requires a degree of knowledge not possessed by an ordinary jury, and a party has a right to present the opinions of experts upon the question.

2. SAME—*Competency in Insurance Cases.*—In an action against a fire insurance company to recover the insurance upon buildings destroyed by fire, for the purpose of determining whether, at the time of the fire, the hazard was greater than when the insurance was written, by reason of changes made in the buildings by the insured without notice to the insurer, it is competent for the company to show all the facts connected with changes in the use of the buildings, and if it requires special knowledge to understand how such changes affected the risk, it is proper to have the same explained by those who have special knowledge.

3. SAME—*Hypothetical Questions.*—All material undisputed facts bearing upon the matter, concerning which the opinion of the witness is sought, should be included in the hypothetical question.

4. SAME—*Objections to, Must Point Out Facts Omitted.*—Counsel objecting to hypothetical questions should point out what admitted fact he claims to be improperly omitted, so that if the court holds the objection good the defendant may amend the question.

5. SAME—*Sufficiency of the Evidence for a Basis.*—Where there is any evidence tending to establish a fact, a party has a right to base a hypothetical question upon such evidence, regardless of the preponderance of evidence upon the subject. He is not obliged to accept the theories of the opposite party as to what the evidence tends to prove.

6. DEPOSITIONS—*Objections to Questions—When to be Made.*—Objections to evidence contained in depositions which can be obviated by amending the question, asking another question or retaking the deposition, can not be presented for the first time at the trial.

7. EVIDENCE—*General Customs Among Insurance Companies.*—It is competent to prove a general custom among insurance companies to refuse a risk on a canning factory, but not a private practice of a single company, of which the insured had no notice.

8. ESTOPPEL—*By Stipulation of Parties Litigant.*—Where the parties to an action at law make an agreed statement, none of the matters so agreed to can be disputed on the trial by either party.

9. DEFENSES—*Increase of Hazard—Insurance—Burden of Proof.*—Where the defense in a suit upon a policy of insurance is wholly devoted to showing that the plaintiff's tenant, after the insurance and without notice to the company, did certain things forbidden by the policy, the result of which was to make the hazard greater at the time of the fire than when the insurance was written, the burden is upon defendant to establish such defense by a preponderance of the evidence.

10. Instructions—*Preponderance of Evidence Where the Facts are Agreed Upon.*—Where the parties stipulate everything necessary to make a *prima facie* case for the plaintiff, an instruction that the plaintiff must prove his case by a preponderance of the evidence, and unless the jury believe that the greater weight of evidence is in his favor, their verdict should be for the defendant, is erroneous and calculated to mislead.

**Assumpsit,** on a policy of insurance. Trial in the Circuit Court of La Salle County; the Hon. Charles Blanchard, Judge, presiding. Verdict and judgment for defendant: error by plaintiff. Heard in this court at the December term, 1898. Reversed and remanded. Opinion filed May 19, 1899.

D. B. Snow, attorney for plaintiff in error; W. H. Hine-baugh and W. C. Snow, of counsel.

Thomas Bates and Goodrich, Vincent & Bradley, attorneys for defendant in error; William A. Vincent, of counsel.

Mr. Presiding Justice Dibell delivered the opinion of the court.

This case and another tried with it are reported as Traders Insurance Company v. Catlin, in 59 Ill. App. 162; 163 Ill. 256; 71 Ill. App. 569. Those opinions give a history of the case and the material provisions of the policy in suit. After our last decision, the case against the Traders Insurance Company was tried alone by a jury. Much additional testimony was introduced on each side, and there was a general and a special verdict for defendant and judgment thereon. Plaintiff prosecutes this writ of error to reverse said judgment. The policy was upon a dwelling house, a carriage house, a farm barn and a granary and certain machinery, all owned by Catlin. After the policy was issued Miller, tenant of the farm, without notice to the insurance company, introduced into a room eighty feet square and thirty-four feet high, in the corner of the barn, machinery for canning his corn, sunk a gasoline tank in the barn-yard seventy-two feet from the barn, placed gasoline therein, and, by means of air forced over the gasoline by a

blower operated by the machinery covered by the policy, conducted gas therefrom in a pipe to the canning machinery to heat the irons for soldering cans, operated the canning machinery about ten days, and suspended operations to wait for the corn to become riper. The canning had been suspended and the machinery idle for five days when that part of the barn most remote from the canning machinery and tank took fire and the barn, granary and machinery were destroyed. This is a suit by Catlin upon the policy to recover the loss. The chief question of fact at the trial was whether the presence of the canning machinery, gasoline tank and gasoline caused the risk of fire to be greater at the time of the fire than it was when the insurance was written.

Hypothetical questions were propounded by defendant to its expert witnesses. Many of these questions, after stating the supposed case, asked the witness whether or not at the time of the fire the hazard was increased. It is argued these interrogatories were erroneous, because they presented to the witness the very question to be decided by the jury and permitted him to usurp the province of the jury. We consider this contention settled in this State by the opinion of our Supreme Court in this case. (163 Ill. 256.) It was there, in effect, held that to determine whether the circumstances connected with the presence of the canning machinery and its attachments materially increased the danger of fire, required a degree of knowledge not possessed by an ordinary jury, and therefore defendant had the right to present the opinions of experts upon that question. This is in harmony with the rule prevailing in this State in other cases. In a condemnation case the jury have only to decide the value of the land proposed to be taken; yet witnesses qualified to give an opinion upon that subject are permitted to testify what, in their opinion, the land is worth. So, on a cross-petition in such a case, persons having the necessary knowledge are allowed to testify whether, in their opinion, defendant's land not taken is depreciated in value by the taking of that part condemned, and if so, how much; yet

those are the only questions the jury are to determine upon the cross-petition.    Like opinions upon the very matter in issue are received as to the mental capacity of a testator or grantor.    (See also James v. Johnson, 12 Ill. App. 286; Henry v. Hall, 13 Ill. App. 343.)    We hold the objection not well taken.

Other hypothetical questions put by defendant inquired whether the risk was increased while the canning machinery was in operation, and it is argued this was incompetent. The ultimate question to be decided was whether, at the very time of the fire, the hazard was greater than when the insurance was written; yet we think it was competent for defendant to show all the facts connected with Miller's change in the use of the building.    If the jury had possessed sufficient knowledge to understand how the operation of the canning plant affected the hazard, the mere narration of the facts would have informed the jury that the risk was or was not at that time increased.    If it was proper to prove the facts, then, as it requires special knowledge to understand how the facts affected the risk, it was proper to have that explained by those who had the special knowledge.    The opinion of our Supreme Court in this case treats this evidence as competent.

It is argued these hypothetical questions omitted many material facts proven and not denied.    We concede the rule contended for that all material undisputed facts bearing upon the matter concerning which the opinion of the witness is sought should be included in the hypothetical question.    But the objection now made was not presented in the court below.    Most of the objections to the hypothetical questions were either general, or that the question was "incompetent, irrelevant and immaterial."    These objections did not go to the form of the question or apprise the court or opposite counsel that material facts were omitted. Once only, so far as we discover, plaintiff objected to such a question as "not embracing all the admitted facts," but even this did not point out what admitted fact plaintiff claimed was omitted.    That question covered nearly three

typewritten legal cap pages. The trial judge had no means of knowing upon what supposed omission he was required to rule. We do not think counsel could, by such an objection, cast upon the judge the burden of scrutinizing each part of this long question and then studying the agreed statement of facts (which itself covered five and a half typewritten pages), to see if he could discover some material admitted fact not embodied in the question. Plaintiff should have pointed out what he claimed was improperly omitted. Then if the court held the objection valid the defendant could have amended the question. Moreover, where there is any evidence tending to establish a fact a party has a right to base his hypothetical question upon that evidence, regardless of the preponderance of the evidence upon that subject (Rogers on Expert Testimony, Sec. 27), and he is not obliged to accept the theories of the opposite party as to what the evidence tends to prove. Under this rule many of these hypothetical questions were free from the objection now urged. Some of them, however, were not proper. For instance, the question put to the witness Dudley, assumed that this was an ordinary hay and stock barn, made no allusion to the shafting and machinery in it when the insurance was effected described in the policy, and asked whether by the introduction of the canning machinery the risk was "changed from that of an ordinary frame, hay and stock barn." For reasons appearing more fully hereafter this was an unfair omission, and the case put hypothetically was not the case before the jury. So, too, there were many inquiries as to the use of oil, rags and oily waste about the canning machinery and its effect upon the risk without any reference to the extent to which the same articles were required by the machinery covered by the insurance. The extent, if any, to which the use of oil, rags and oily waste was increased was the only respect in which such an inquiry would aid the jury, and defendant, having the burden of proof, should have furnished the evidence necessary to enable the jury to make the comparison.

Defendant was permitted to prove by the witness Bowman,

over plaintiff's objection, a conversation between Miller and one of his employes at the railroad depot, two or three days before the fire, in which the employe claimed $3 more than Miller paid him for his labor and threatened to get even with Miller; and also further threats against Miller made by the employe in the hearing of Bowman out of the presence of Miller.   There was no evidence that this man had worked at the canning business or that his dissatisfaction was in any way connected with the placing or operating of the machinery for canning.   Defendant had already proved by Miller, on his cross-examination, that he had trouble with one employe who claimed more pay than was due him, and that said employe had never worked at canning, but worked in the field.   In our judgment this evidence was incompetent and prejudicial to plaintiff.   But defendant's next witness, Hein, testified to a like conversation between Miller and one of his employes, in which a like threat was made, on the same subject at about the same time, and which, from Miller's testimony, was probably with the same man, and plaintiff did not object.   As the complaint and threat of the employe testified to by Hein went to the jury without objection, we do not consider the error in admitting the evidence of Bowman would justify a reversal.

Our attention is called to a number of leading, suggestive and improper questions propounded by defendant to its witnesses.   These were not hypothetical, but assumed as facts conditions of which there was no proof, and were calculated to impress the jury with the belief that such proof had been introduced.   They also suggested to the witness theories for his adoption, and there was in many cases a reply of the kind suggested.   But the objections interposed were general, and not that the questions were leading and suggestive, and assumed the existence of that which was not proven.   We think the objections insufficient to avail plaintiff here.   So far as said questions were contained in depositions, the defects were not pointed out by objections made when the depositions were taken so that the questions could be amended, and plaintiff did not, before the trial, move

to suppress the questions and answers thereto; and it was too late at the trial to make special objections.   Objections to evidence contained in depositions which can be obviated by amending the question, asking another question or retaking the depositions, can not be presented for the first time at the trial. (Kimball v. Cook, 1 Gilman, 423; Moshier v. Knox College, 32 Ill. 155; Goodrich v. Hanson, 33 Ill. 498; Kassing v. Mortimer, 80 Ill. 602.)   Moreover, each side was guilty of this fault.   One side assumed in its questions that this was " an idle canning factory," instead of leaving that question to the jury.   The other side equally invaded the province of the jury by assuming in its questions that this canning machinery, with gasoline tank attached, was mere "cold iron and steel."   These are but examples of many improper assumptions by counsel in their questions.

Defendant was permitted to prove by several witnesses, over plaintiff's objections, that the Traders Insurance Company does not insure canning factories.   In the absence of notice to Catlin of such practice we hold this evidence incompetent.   It would, no doubt, be competent to prove a general custom among insurance companies to refuse such a risk, but not a private practice of a single company, of which the insured had no notice.   Luce v. Dorchester Ins. Co., 105 Mass. 297;  2 May on Insurance, Sec. 582; 1 Wood on Insurance, Sec. 257.

The parties in this case made an agreed statement of facts which was read in evidence by plaintiff.   It admitted the insurance, the loss by fire, the date of the loss; that the loss greatly exceeded all insurance; that no question was raised by defendant as to due notice of loss or proofs of loss; that if plaintiff was entitled to recover he was entitled to the full amount named in the policy, with interest, according to law.   It stipulated everything necessary to make a *prima facie* case for the plaintiff, except that it did not state the amount of insurance by defendant, but for that expressly referred to the policy.   Of course, none of the facts so agreed to could be disputed during the trial by either party. For example, after making this agreed statement of facts,

Catlin v. Traders Ins. Co.

defendant would not have been allowed to introduce evidence tending to show it did not issue the policy, or that the fire did not occur; that proofs of loss were not made as required by the policy; or that the loss was less than the amount of insurance. The production of the policy, to show the amount of insurance written by defendant on the barn, granary and machinery, made a case for plaintiff. At the trial no effort was made to contradict any of the stipulated facts making a *prima facie* case for plaintiff. The defense was wholly devoted to showing that plaintiff's tenant, after the insurance and without notice to the company, did certain things, some of them forbidden by the policy, the result of which was that the hazard was greater at the time of the fire than when the insurance was written. That was the only question tried. It is clear the burden rested upon defendant to establish that defense by a preponderence of the evidence, and unless it did so, plaintiff was entitled to a verdict. No instruction was given the jury advising them upon whom the burden of proof rested except No. 16, given at the request of defendant. It was as follows:

" You are further instructed that the plaintiff must prove his case by a preponderance of the evidence, which means a greater weight of the evidence; and unless you believe that the greater weight of the evidence is in favor of the plaintiff, your verdict will be for the defendant."

In an ordinary action, where plaintiff's *prima facie* case is contested and denied, such an instruction would be substantially correct. But in such a case as this, where defendant has admitted all the facts *prima facie*, entitling plaintiff to recover, and upon the only question litigated the defendant has the burden of proof, we think the instruction erroneous and calculated to mislead. It was not true in this case; plaintiff had to prove his case by a preponderance of the evidence, for defendant admitted his case, and under the agreed statement of facts could not be permitted to dispute it. The agreement made it necessary for defendant to establish an affirmative defense to overcome plaintiff's *prima facie* case. While the first part of the instruction referred in terms to plaintiff's case, the latter part would naturally be understood

by the jury as referring to the subject upon which conflict-ing testimony had been introduced, and it told them that unless the greater weight of the evidence was in favor of the plaintiff their verdict should be for the defendant. As applied to the only issue litigated it told the jury to find for defendant unless plaintiff had the greater weight of evidence; in other words, unless the greater weight of the evidence was the risk was not increased, they should find for defendant. A similar instruction was held misleading and erroneous where there was no serious controversy but that plaintiff had made a *prima facie* case in American Straw-board Co. v. C. & A. R. R. Co., 177 Ill. 513. The special finding does not show the error was harmless, for this instruction, as applied to the question litigated, was likely to be understood by the jury to mean that they should find the hazard increased unless plaintiff had shown by a preponderance of the evidence that it was not. We also think that in view of the question at issue, the special ques-tion put to the jury should not have called this "a frame hay and stock barn," for the reasons hereinafter stated.

Instruction No. 17, given at the request of defendant, was as follows:

" You are further instructed that if you believe from the evidence that at the time of the fire which destroyed the building, which had been insured as a frame hay and stock barn, said building was being used for any other purposes at the time of the fire which increased the hazard from that of a frame hay and stock barn, then your verdict must be for the defendant, even if such change or use has not been shown to have contributed to the destruction of said build-ing."

The policy in suit described the property insured as fol-lows :

" $2,200 on frame dwelling house, with shingle roof, in-cluding plumbing and all permanent fixtures therein situate, attached and occupied by T. L. Miller as his family resi-dence; $320 on frame carriage house with shingle roof, situated about 140 feet from the above described dwelling; $160 on frame granary with shingle roof, situated about 150 feet from the above described carriage house; $160 on the

boiler, engine, machinery, shafting and belting and connections, and $2,600 on frame hay and stock barn with gravel roof, including basement and foundations, situate about 140 feet from the above described granary, all situate on stock farm. * * * Permission granted to make repairs and alterations."

This policy was but a renewal, in the name of Catlin, of a prior policy upon the property issued three years before when owned by Miller and wife. The defendant put in evidence the application for said prior insurance, and it described said farm buildings, boiler, engine, machinery, shafting, belting and connections in substantially the same language. The policy does not state in what part or parts of these several farm buildings said "boiler, engine, machinery, shafting and belting and connections" are located, but, it is obvious it contemplates they are in some or all of said described buildings. The oral evidence shows that at the time of said first application, and ever since, the boiler and engine were in the granary, the shafting extended about 144 feet in a box underground from the granary to and into the basement of the barn; the belting was attached to said shaft by pulleys thereon in the barn, and was used to conduct the power from said shaft to the machinery; and that there was in said barn machinery operated by power thus transmitted from the shafting. The policy does not in express terms say permission is given to operate said boiler, engine, shafting, machinery, belting and connections, but such permission is clearly implied. Farmers do not put such machinery in their farm buildings to remain idle, but for use, and the insurance company must have so understood, and must be held to have contracted that it should be operated. Before the canning machinery was put in there had been in that part of the barn where it was afterward placed, three machines, a hay cutter, a root grinder or pulper, and a cake crusher to break up oil cake. The proof is, this machinery was used to prepare the produce of the farm for feeding it to the cattle and for selling. The insurance company finds no fault with the operation of this machinery in the barn, and apparently could not

under the policy. In the briefs plaintiff calls these large machines, and defendant calls them small, and in some of defendant's hypothetical questions they were described as such machines as are ordinarily used in barns. Our attention is not called to any evidence which shows that any machinery operated by steam power is ordinarily used in a hay and stock barn, nor which shows the size of the machinery described in this policy, and which was in the barn when it was insured. We may fairly assume the machinery was sufficiently large and heavy, so that it was considered profitable to put in the steam engine, boiler and shafting to run it. We understand the agreed statement of facts to stipulate that the machinery, boiler, engine, etc., covered by the policy and destroyed by the fire, were worth not less than $1,500. The policy did not describe the machinery in detail, nor restrict the amount or kind of machinery which might be operated in the barn by power from the shaft. It contemplated the operation of an indefinite amount of machinery for farm purposes. This was not insured as a mere hay and stock barn, but as such a barn with machinery in it operated by steam power, and with the right to so operate it for the use of the farm. The use of any canning machinery must necessarily increase the hazard over that which would exist in a mere hay and stock barn, yet it might be no more hazardous than such a barn with such machinery operated therein as this policy contemplated. This seventeenth instruction ignored the hazard arising from the machinery Miller had a right to operate in the barn under the terms of the policy, and told the jury their verdict must be for defendant if the hazard was increased from that of a hay and stock barn, and virtually directed a verdict for defendant. Instruction No. 20 given for defendant contained a like error, and left it to the jury to say whether the policy was issued upon a hay and stock barn. It ignored the provisions of the policy relating to machinery, and left the jury to construe the policy.

The judgment is reversed and the cause remanded for a new trial.