o **Daniel B. Stewart, Appellee, v. Illinois Central Railroad Company, Appellant.**

1. RAILROADS, § 921*—*when evidence to show cause of fire too remote.* In an action against a railroad company for setting fire to plaintiff's buildings alleged to have been caused by sparks thrown from defendant's locomotive, evidence that tramps were seen on railroad track about two miles from the place of the fire about three hours before the fire and evidence that one of the buildings had been on fire about five years before, *held* inadmissible because too remote and not tending to show that the fire was not started by defendant's locomotive.

2. RAILROADS, § 921*—*when evidence of condition of engine after setting of fire inadmissible.* In an action against a railroad company for setting fires by sparks thrown from its locomotive, it is proper to show the condition of the engine immediately after the fire started, but evidence that the engine was being repaired a week after the starting of the fire is incompetent.

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

3. WITNESSES, § 283*—*matters to which witness may be cross-examined for purpose of impeachment.* In an action against a railroad company for setting fire to a building by sparks thrown from its locomotive, where the engineer after testifying to the condition of the spark arrester was asked on cross-examination, for the purpose of laying a foundation for his impeachment, if he had not told a person about a week after the fire that he had asked the company to repair the engine before the fire and that it was then in the shops for repair, *held* that an objection to the question should have been sustained for the reason it sought to impeach him on irrelevant and immaterial matters.

4. WITNESSES, § 279*—*when variant statements inadmissible for purpose of impeachment.* Variant statements in order to be admissible for purposes of impeachment must be relevant to the matter in issue.

5. RAILROADS, § 941*—*when instruction as to evidence required to overcome presumption of negligence in setting fires erroneous.* An instruction given for plaintiff that the law presumes a railroad company guilty of negligence on proof that a fire was communicated to plaintiff's property by the company's engine and that the verdict should be for plaintiff "unless this presumption is overcome by the evidence," *held* to place a greater burden on defendant than the law requires, and that the instruction should have been "unless this presumption has been rebutted or overcome by the evidence."

6. RAILROADS, § 941*—*when instruction as to evidence required to overcome plaintiff's prima facie case for setting fires erroneous.* An instruction requiring plaintiff's *prima facie* case made by proof of the communication of the fire by defendant's engine to be overcome by a preponderance of the evidence, *held* erroneous, for the reason that it requires defendant to introduce more evidence than would neutralize or rebut the presumption.

Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the April term, 1913. Reversed and remanded. Opinion filed October 16, 1913. Rehearing denied November 6, 1913.

CHARLES L. CAPEN, for appellant; JOHN G. DRENNAN, of counsel.

LIVINGSTON & BACH and BARRY & MORRISSEY, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is a suit brought by Daniel B. Stewart against the Illinois Central Railroad Company to recover damages for the destruction by fire of a barn, hay shed and contents on the night of October 25, 1911, at Anchor, Illinois, averred to have been caused by sparks thrown from a locomotive engine of defendant. The first count avers negligence of the defendant in failing to equip its locomotive with the best and most approved appliances to prevent the escape of fire, and in failing to keep the same in suitable order and repair. The second count avers that the defendant failed to use reasonable care to prevent the escape of fire from its locomotive and through the negligence and carelessness of the defendant and its servants sparks were thrown, etc. The third count avers that the defendant so negligently used its locomotive that sparks escaped from it and set fire to plaintiff's property. A jury returned a verdict for plaintiff for five thousand dollars, on which judgment was rendered and the defendant appeals.

The village of Anchor is on the railroad of appellant between Bloomington and Kankakee. The railroad runs through Anchor in a northeasterly and southwesterly direction and at the southwest corner of the village it curves and runs almost directly west. The depot is near the centre of the village. There is an up grade through the village to the northeast of thirty-two feet to the mile. The barn and property destroyed were located about seven hundred feet northeast of the depot and on the southeast side of the track. There are two elevators near the depot, the Mean's elevator is about sixty feet southwest of the depot and the Farmers' elevator is about the same distance northeast of it. The barn and hay shed stood southeast of the track and parallel with it; the nearest side of the barn was one hundred and sixteen feet from the track and the hay shed was northeast of the barn and eighty feet from the track.

A freight train of eighteen cars with a tonnage of 593 tons drawn by a locomotive of 950 tons capacity approached Anchor from the west about nine o'clock in the evening. As it approached the depot it was signaled to stop for a passenger and when it stopped the locomotive stood about north of the east end of the hay shed. Some ten or fifteen minutes after the train had passed, the barn was discovered to be on fire; the fire seemed to be both on the inside and outside of the barn. There is evidence that the locomotive was throwing sparks just west of the Mean's elevator, and there is evidence that the locomotive went by the elevators, the depot and the buildings burned, drifting, that is not working, and that under such circumstances it could not throw sparks. No witness testifies to seeing sparks from the engine after it passed the depot and as it went by the barn and hay shed. The evidence is conflicting as to the direction of the wind; some witnesses testify that it blew from the southwest, others from the west, and still others from the northwest and the north.

It is contended that because no witnesses saw sparks thrown from the locomotive as it went by the barn and hay shed that the judgment cannot be sustained. As there are errors of law in the case, it is unnecessary to review the merits of the case.

Appellant insists that the court erred in sustaining objections to questions tending to show that the barn had been on fire in 1906, and that tramps had been seen on the railroad track about two miles from Anchor about six o'clock that evening going towards Anchor. The court properly sustained objections to this character of evidence; the facts sought to be proved were too remote and did not tend to show that the fire was not started by appellant's locomotive.

The evidence presented by appellant tended to show that the locomotive was equipped with a proper spark arrester of the most approved construction, comparatively new and in good repair, and that the locomotive

was properly managed. The engineer, Kellogg, after testifying to the condition of the spark arrester and the management of the engine, was asked on cross-examination for the purpose of laying a foundation for his impeachment: "If about a week after the fire on the Kankakee platform he had not said to Joseph Irwin, that he had asked the company to repair the engine several times before the fire and that it was then in the shops for repair?" "Did you not then and there tell him the engine was then in the shop for repairs?" Objections to these questions were overruled and the witness answered admitting having had a conversation with Irwin at that place about that time, but denying making any such statement to Irwin or that he had asked the company to repair the engine or that it was then in the shop for repairs. Irwin was asked if on the platform of the Illinois Central depot in Kankakee about a week after the fire he had a talk with Kellogg; an objection to the question was overruled. The questions were then asked him and answered after objection had been overruled: "Did you have a conversation with him?" Ans. "Had one sometime after the fire." Q. "Did he say to you then and there in that conversation that he had asked them to repair the engine several times before the Stewart barn burned but they had not repaired it?" Ans. "He said that in substance." Q. "Did he say to you at the same time and place that the engine was then in the shop for repairs?" Ans. "I should judge the substance was about the same, yes he did, it had been taken in."

Appellant insists that these questions did not fix the time and place and also that the questions were improper for the reason that the matters inquired about were immaterial, that the repairs might have referred to some other part of the engine. The witness, Kellogg, had admitted having a conversation with Irwin at that platform about a week after the fire, and the question contains the words "then and there" refer-

ring to the time and place fixed in a prior question. The objection to the form of the questions was properly overruled.

If the engineer did say what it is claimed he said, still there is nothing in the evidence tending to show that such statements were made with reference to anything in any way connected with the spark arrester, or that they were in any way connected with the throwing of sparks by the engine. If the engine was in the shops for repairs a week after the fire, then that was an attempt to prove indirectly what was not proper to prove directly. It would have been proper to show the condition of the engine immediately after it is claimed it started the fire, but that the engine was being repaired a week later is incompetent. *Howe v. Medaris*, 183 Ill. 288; *Sample v. Chicago, B. & Q. R. Co.*, 233 Ill. 564; *Kath v. East St. Louis & Suburban Ry. Co.*, 232 Ill. 126; *City of Taylorville v. Stafford*, 196 Ill. 288; *Hodges v. Percival*, 132 Ill. 53. The objection to the questions should have been sustained for the reason it was sought to impeach the witness on irrelevant and immaterial matters, and to get before the jury incompetent and misleading evidence. Variant statements in order to be admissible for purposes of impeachment must be relevant to the matter in issue. *Woods v. Dailey*, 211 Ill. 495; 7 Encyc. of Ev. 78.

It is also insisted that there was error in instructions given to the jury. Paragraph 103 of chapter 114 of the Statute (J & A. ¶ 8891) provides: "That in all actions against any person or incorporated company for the recovery of damages on account of any injury to any property, whether real or personal, occasioned by fire communicated by any locomotive engine while upon or passing along any railroad in this State, the fact that such fire was so communicated shall be taken as full *prima facie* evidence to charge with negligence the corporation, or person or persons who shall, at the time of such injury by fire, be in the use and occupation of such railroad," etc.

Appellee's fifth instruction is: "If you believe from the evidence that the fire in question was communicated to plaintiff's property from an engine used by the defendant upon its railroad, then the law presumes that the defendant was guilty of negligence and in such case your verdict should be in favor of the plaintiff unless this presumption has been overcome by the evidence." The court also modified the latter part of appellant's first instruction so as to read, "But if you shall believe from a preponderance of the evidence that defendant did set out the fire, as claimed, still if the preponderance of the evidence shows that the engine was in good order, properly handled by skilful employees, who were competent to perform their duties, and was equipped with the most approved spark arrester then notwithstanding you may believe that the engine set out the fire, it is your duty to find the defendant not guilty." The court inserted the words "a preponderance of." The appellant was entitled to have the instruction given as asked without the words inserted by the court. Under the wording of the statute the communication of fire by a locomotive is full *prima facie* evidence to charge the corporation with negligence, but the appellant did not have to overcome such *prima facie* case by a preponderance of the evidence. All that it was necessary for appellant to do, to entitle it to a verdict, was to rebut such *prima facie* case. If the evidence for the appellant neutralized, rebutted or was equal to the presumption arising from the starting of the fire by the engine, if that was proved by the evidence, still the appellee would not be entitled to recover. The burden of establishing the truth of the issue remained with the plaintiff. *Egbers v. Egbers,* 177 Ill. 82; *Chicago Union Traction Co. v. Mee,* 218 Ill. 9; *Vischer v. Northwestern El. R. Co.,* 256 Ill. 572. The appellee's fifth instruction placed a greater burden on appellant than the statute requires; all that appellant was required to do was to produce evidence to meet and neutralize the presumption. The instruction should

have been "unless this presumption has been rebutted or overcome by the evidence." *American Strawboard Co. v. Chicago & A. R. Co.,* 177 Ill. 513. For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*