# Chicago City Railway Company v. Oscar W. Brecher, Admr.

### Gen. No. 11,099.

1 EXPERIMENTS—*when evidence of, incompetent.* The results of ex-
periments are incompetent as evidence unless all the essential conditions
under which they were conducted were identical with those existing at
the time of the accident. (See reporters' note at conclusion of opinion.)

2. CONDUCT OF JUROR—*when, entitles to new trial.* Where, during
the trial of a case, a juror states from his seat in the jury box that he
will not regard certain evidence which is competent and which has

been duly admitted in the case. and does so in a manner indicating a feeling of resentment or of anger or disgust, his conduct is such as to entitle the party injured to a new trial in the event of an adverse verdict.

Action on the case to recover damages for death caused by alleged wrongful act. Appeal from the Superior Court of Cook County; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the October term, 1903. Reversed and remanded. Opinion filed January 25, 1904. Rehearing denied February 25, 1904.

WILLIAM J. HYNES, JAMES W. DUNCAN, and WATSON J. FERRY, for appellant; MASON B. STARRING, of counsel.

DENEEN & HAMILL, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

This is an action brought by appellee, as administrator of the estate of Robert Gunn, to recover damages for the death of said Gunn, which was occasioned by the alleged negligence of appellant. It appears that the deceased, September 29, 1900, was riding on the front footboard of an engine which came to a crossing of appellant's track, when, by reason of the unsafe condition of such track and crossing, the weight of the engine caused them to sink down so that the footboard was caught by some portion of the track and crossing and was thereby broken and the deceased was thrown off and instantly killed.

Appellee has not seen fit to follow this appeal. We are therefore deprived of the benefit of his view of the merits. We have, however, considered the questions raised by appellant, and here present our conclusions upon them.

*First.* It seems that just before the time of the accident appellant had been repairing this track and crossing, and had left them in an unfinished condition, in this, that all the filling and tamping had not been done. The accident happened at 11:15 of the night of September 29, 1900. The engine upon which Gunn was riding at the time he was killed was drawing seven loaded cars. The next morning between seven and eight o'clock, the laborers went on with the work of completing the repairs at and in the vicinity of this

crossing and track. An hour later the same engine equipped with a new footboard, which is not shown to have been of the same height as was the old one, without cars attached, was run over the crossing and track. The speed of the engine upon the two occasions was not the same. There is no evidence that the temperature at midnight and in the forenoon was the same. In spite of this dissimilarity of conditions and over the repeated objections and exceptions of appellant, the results of this experiment were submitted to the jury. This action of the trial court is reversible error. Unless it be shown that all the essential conditions of the experiment are identical with those existing at the time of the accident, the results of that experiment have no legitimate bearing upon the issues before the jury, since, instead of enlightening the jury, their tendency is to confuse and to mislead them. Libby v. Scherman, 146 Ill. 541; L. E. & W. Ry. Co. v. Muggs, 132 Ind. 168; Decatur C. W. & Mfg. Co. v. Mehaffey, 128 Ala. 242; Hawkes v. Charlemont, 110 Mass. 110; Chicago, etc., v. Champion, 36 N. E. Rep. 221; Yates v. People, 32 N. Y. 509; Sullivan v. Com., 93 Pa. St. 285.

*Second.* When the witness Shepston was cross-examined, he was asked if a certain statement concerning the crossing and tracks then shown him was signed by him, and answered that it bore his signature. Upon redirect he was asked:

" Q. State what your recollection is as to the signing of that statement, and all the facts with reference to it. A. I signed the paper, but I never read it. There was a gentleman, I cannot recall his name, examined me on the points, and told me what the paper contained, and I signed it through that—through what he told me was in it, because I was in a hurry; I didn't have time for to sign the paper either, at that time. It was not written in my presence, it was brought all written out.

Juror De Freene: I want to ask a question. Did you have that paper before you signed it? did you take an acknowledgment before a notary public? A. No, sir.

Chicago City Ry. Co. v. Brecher.

Juror De Freene: What's the use of having that paper before us? I wouldn't trust it like this. There is no oath to it. I wouldn't recognize it. I don't see any sense in it to waste our time here for a piece of paper that has just only been made out down there between two men, and the witness don't know the parties, he can't tell what his address was. You can't tell what the paper has been made out of. I don't think it's of any use.

Mr. Duncan: Does the court think that after this exhibition that this case ought to go any further? I don't think it should, for the most substantial and well-defined reasons in the world.

The Court: Well, I will let your position be noted, Senator, at present. (To Mr. Babcock.) Have you any further questions?

Mr. Babcock: No further questions. * * *

Mr. Hamill: It is not sworn to.

Juror De Freene: That is all I wanted to know—if it was sworn to."

As soon as Mr. Duncan, counsel for appellant, could get the ear of the court out of hearing of the jury, he moved to withdraw a juror and continue the case on account of the actions and expressions of the juror. The motion was opposed and denied, to which appellant excepted. Mr. Duncan then moved that, for the same reasons and their possible influence on the other jurors, the entire jury be discharged. The court said: "The juror's conduct and manner were both emphatic, and some dissatisfaction, perhaps resentment, was exhibited by his manner and tone of voice on the subject covered by his statements; but I am not personally acquainted with the juror's manner and habits so as to warrant me in saying that he was angry or indignant. * * * His attitude ran to that subject which was then the subject of inquiry, as I took it. He had the appearance of being disgusted on that subject." The court sustained an objection to this motion, and appellant took an exception to the ruling. Mr. Duncan then moved that the juror, De Freene, be discharged and the case proceed

with eleven jurors. This motion was objected to, the objection was sustained, and appellant took its exception.

It is a fundamental principle that every litigant has a right to be tried by an impartial tribunal.

The written statement had been received in evidence. It was signed by the witness shortly after the accident. Some of the material facts therein set forth radically differed from the evidence of the witness on the stand. Counsel were entitled to have the paper fairly and impartially considered by the jury, and to have its credibility and the weight to be given to it passed upon by the jury as a body. For one of their number, during the progress of the trial, to thus flout this evidence and to declare that he would not recognize it, was a breach of his duty as one of the triers of the facts of the case, and showed his utter unfitness for the high place he then occupied. It is not material when this unfitness appeared. Upon its discovery the trial court should have corrected it, for it threatened to destroy the purity of trial by jury. A juror should come to the trial of a case without prejudice for or against either of the parties, or for or against the issues involved; he should impartially receive, consider and weigh in equal scales all the evidence which the court suffers to come before him and his fellows; and he should not express an opinion upon, nor come to a final conclusion as to the evidence, nor as to any material part thereof, until he and his fellows have retired to consider upon their verdict. If the rule were otherwise, the right to trial by jury, which lies at the foundation of the liberty of the citizen, would become a mockery. Even at the Old Bailey, more than two hundred years ago, in the selection of a jury for the trial of Peter Cook, Chief Justice Treby recognized this rule when he said: "If any man in this panel have any particular displeasure to the prisoner, or be indifferent, or have declared himself so, I do admonish and desire him to discover so much in general; for it is not fit, nor for the honor of the King's justice, that such a man should serve on the jury."

In State of Louisiana v. White, 48 La. 1444, on the mo-

tion for new trial on conviction for manslaughter, it appeared that at the conclusion of the trial one of the jurors went to the water closet. When he came out one of the deputy sheriffs said to him, "I guess this is good for all night." The juror replied: "Oh, no, I will wind it up in a short while; one way or the other will suit me." On appeal, the reviewing court said in respect of it, p. 1445: "Any act of a juror clearly indicating a disregard of a solemn duty imposed upon them, and to disregard the solemnity of their oaths, will be sufficient to avoid the verdict. When the juror was sworn the defendant had a right to believe that he would give him a fair and impartial trial from the testimony adduced on the trial. He could not expect that the juror would give no weight to the testimony and consult his own convenience and pleasure and make it a matter of indifference whether he would convict or acquit the defendant if in that way he could avoid the unpleasant confinement for a night in the jury room." See further, in support of this rule, 2 Graham & W. on New Trials, 370; Meaux v. Whitehall, 8 Ill. App. 173; Robinson v. Randall, 82 Ill. 522; People v. O'Neill, 107 Mich. 560; Allum v. Boultbee, 8 Exc. 737; Davis v. Walker, 60 Ill. 452; Flanders v. Mullin, 73. Vt. 276; Forsyth v. Central Mfg. Co., 103 Tenn. 497; Rush v. St. Paul City Ry. Co., 70 Minn. 5; Johnson v. Hobart, 45 Fed. Rep. 542. The court below, under the circumstances of this case, should have relieved appellant from the probable consequences of a trial by an unfair and prejudiced jury by granting the first or the second motion above set forth.

The judgment of the Superior Court is reversed and the cause is remanded.

*Reversed and remanded.*

REPORTERS' NOTE. Experiments are incompetent unless conducted under circumstances identical or very similar to those surrounding the fact sought to be illustrated. Fien v. Covenant Mutual Benefit Association, 60 Ill. App. 277. Tests made during the trial of a case may be shown in evidence where the devices tested were introduced by opposing parties as samples of defective devices delivered under the contract in controversy in the case. Columbus Construction Company v. Crane,

98 Fed. Rep. 957, 40 C. C. A. 35. Evidence, likewise, as to experiments to determine how far a train could be seen coming to a crossing from the highway, is competent. E. J. & E. Ry. Co. v. Reese, 70 Ill. App. 463. An experiment conducted to determine the amount of pressure required to pull the trigger of a revolver, held competent. Collins v. People, 194 Ill. 517.