R. A. Watson Orchards, Inc., for use of itself and also for use of Springfield Fire & Marine Insurance Company of Springfield, Massachusetts, and Knickerbocker Insurance Company of New York, Appellant, v. The New York, Chicago & St. Louis Railroad Company, Appellee.

Gen. No. 8,143.

Opinion filed May 2, 1928.

C. C. LEE and CRAIG & CRAIG, for appellant.

POPE & DRIEMEYER, for appellee; VAUSE & KIGER and W. A. EVERSMAN, of counsel.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

This is an action of trespass on the case brought by the R. A. Watson Orchards, Inc., the appellant, for its own use as well as for the use of two insurance companies, who have not joined in the appeal against The New York, Chicago & St. Louis Railroad Company, the appellee, to recover damages for the destruction of the appellant's cold storage plant, located at Neoga, Illinois, and the contents thereof, claimed to have been set fire by the negligent operation of the appellee's locomotive engines. The case was tried at the April term, 1927, of the circuit court of Coles county and resulted in a verdict of the jury finding the appellee not guilty. A motion for a new trial was made by appellant, the same was overruled and the court thereupon entered judgment on the verdict in favor of the appellee in bar of the action and against appellant for costs. To review that judgment the appellant has perfected this appeal.

Plaintiff will be referred to as appellant and defendant as appellee.

The first count of the declaration alleged that appellant, a corporation organized under the laws of the State of Illinois, on, to wit, the tenth day of October, 1925, was the owner and in the possession of a certain cold storage plant consisting of a number of, to wit, four buildings, and their equipment, appurtenances and contents, located immediately north a dis-

tance of, to wit, 50 feet from the railroad tracks of the appellee at, upon and near certain real estate therein described, which was owned and possessed by the appellant; that said buildings, the sizes of which were therein alleged, were equipped with and contained certain heating and electrical equipment, power plant, refrigerating system and machinery, factory and office furniture and fixtures, ice tank and cans, brine tank, auto water filter, with softener and equipment, cooling apparatus and storage equipment, electric freight elevator, time recorder, conveyors, motors, belts, barrels, new cider kegs, barrel heading corrugated caps, baskets and other equipment, apparatus and machinery, and also, to wit, 500 kegs of cider and a large number of apples, to wit, 25,000 barrels and 8,000 crates, and that all of the said buildings, appurtenances, apparatus, machinery, equipment, material, surplus equipment and all of the cider and apples were then and there owned by and were the property of the appellant.

It was further alleged that appellee operated a certain line of railroad, extending easterly and westerly along and near the south side of said cold storage plant at about a distance of 50 feet therefrom, and was operating divers locomotive engines upon said railroad. It was averred in said count that it then and there became the duty of the appellee to use reasonable care to keep and maintain said locomotive engines in suitable order and repair and to so operate its said locomotive engines so that fire or sparks would not be liable to escape or be thrown from its said locomotive engines to or upon property adjacent or near to the right of way of appellee.

It was further alleged that, notwithstanding its said duty, the appellee, then and there, on the day aforesaid, wholly failed therein and did not use reasonable care to keep and maintain its said locomotive engines so that fire or sparks would not be liable to

escape or be thrown therefrom to or upon property adjacent or near to the right of way of the appellee, but, while a certain locomotive engine of the appellee, under the control of the appellee, was, then and there, at the hour of, to wit, 11:30 p. m., passing along and upon said railroad in a westerly direction past the said cold storage plant, divers sparks and brands of fire then and there escaped and were thrown from said locomotive engine, by and through the said negligence and carelessness of the appellee, to and upon said cold storage plant and buildings of the appellant, while appellant was in the exercise of due care and caution for the safety of the said cold storage plant, and said sparks and brands of fire then and there set fire to said cold storage plant and buildings, and fire was thereby communicated thereto by said locomotive engine, and thereby fire spread and was communicated throughout said cold storage plant and buildings, whereby the said cold storage plant, buildings, appurtenances, apparatus, machinery, equipment, material, surplus equipment, cider and apples, as hereinabove described, being then and there of the value of, to wit, $300,000, were consumed by said fire and wholly destroyed and lost to the appellant, all without any fault or negligence on the part of said appellant.

The second count contains exactly the same allegations as the first count, except that where the first count alleges that the locomotive of the appellee was passing the warehouse in a *westerly* direction at the hour of, to wit, 11:30 p. m., the second count alleges that said locomotive was passing the said warehouse in an *easterly* direction at the hour of, to wit, 11:30 p. m.

The third count contains exactly the same allegations as the first count, except that where the first count alleges that a certain locomotive engine of the appellee was passing the warehouse in a *westerly* direction at the hour of, to wit, 11:30 p. m., the third

count alleges that certain locomotive engines of the appellee were passing the warehouse, one in an *easterly* direction and one in a *westerly* direction, at the hour of, to wit, 11:30 p. m.

Upon the trial of the cause testimony was offered and admitted tending to show that the right of way of appellee at this place was 60 feet wide, about 30 feet on each side of the track. Immediately north thereof and about 200 feet west of the Illinois Central Railroad, which intersected the tracks of appellee, was located the cold storage plant of appellant, erected on real estate which belonged to the appellant. The entire plant consisted of a group of several buildings, most of which were erected in 1918, and the remainder since that time. At the southeast corner of the main storage building the tracks of appellee were only 46 feet away from the cold storage plant. At the southwest corner of the plant the engine room, a small one-story building, was situated, and just east of it was the ice plant, another one-story building. Immediately north of them was the main storage building, 200 feet east and west and 116 feet north and south. The roof of this building sloped slightly to the east and west, the high line being in the center. The main storage building was constructed of concrete and hollow tile, the outer walls above the basement, which was constructed of concrete, consisting of an outside wall of 8-inch tile and an inside wall of 5-inch tile, between which there was a space of 8 inches, which was filled with granulated cork. This building consisted of three floors or stories, one of which, called the first story or basement, was below the ground. The floor of the first story was composed of cinders, concrete, 2 inches of cork and more concrete. Along the north side of this floor, for the entire width east and west of this building, ran a vestibule about 10 feet wide. The remainder of this floor was divided into three rooms by two walls running north and south, which were com-

posed of hollow tile with a space of 7 inches between, filled with granulated cork. The room farthest east was known as A1, the next one B1 and the next one C1. The second floor likewise had a vestibule 10 feet wide, running east and west at the north end, and was likewise divided into three other rooms or compartments, the walls between them being extensions of the walls between the rooms on the lower floor. These compartments on the second floor were known as A2, B2 and C2, respectively. On the west side of A2 was a little ice room, known as A3. At the south end of room C2 was located the brine room, containing a large brine storage tank. The floor between the first and second stories was made of wood 2 inches thick.

Above the second floor was the attic. The floor of the attic was made of dressed and matched wooden flooring, upon which was an insulated preparation, then another thickness of 1-inch flooring, and on top of that was 12 inches of regranulated cork. In the sides of the attic walls were ventilators or louvers for ventilation. They were 36 inches long and 30 inches up and down. They were made of lumber with slats across. These slats consisted of parallel boards, one and one-half inches apart, which sloped up toward the inside at an inch and one-quarter incline, the lowest part of the slope being on the outside, leaving about three-eighths to half an inch space between the lower edge of each board on the outside and the inside top edge of the next board below it so that a person standing with his eyes on the level with the open space could see straight through. Between the sill of the window and the lowest slat was a space of about an inch and a half. There were three of these louvers on the south side of the main storage building in the wall of the attic above the roof of the ice storage room and the engine room.

The middle louver in the south wall was about the center of the building and was about 65 or 75 feet

north of the tracks of the appellee. This louver was about 30 inches above the flat roof of the ice room and engine room. The tracks of appellee west of the Illinois Central were on a fill from 6 to 10 feet above the level of the ground, so that this louver was about 17 or 18 feet above the level of the tracks, which is higher than the stack of a locomotive passing on the track. The other two louvers in the south wall of the attic were about 60 feet each way from the middle louver.

It was 18 inches from the bottom sill of the louvers in the south wall to the top of the cork on the floor of the attic. At the bottom of each louver on the inside was a ledge about 4 or 5 inches wide.

On the west side of the attic there were two louvers, and on the north side there was one and on the east side there were two.

From time to time birds' nests had been built in all of these louvers, and on the ledges at the bottom of the louvers, including the middle one on the south, and employees of the appellant had pulled them out and the straw and feathers and other material of which the nests were made were left lying on the ground cork, immediately inside of the louvers. This was true as to the middle louver on the south side. Birds' nests had been cleaned out of the louvers for several years. These birds' nests were removed from the south louvers in August, 1925, and also the last of September, 1925, when sparrow nests and rubbish were pulled down on the cork.

About 3 feet north of the middle louver in the south wall was a wooden air shaft about 2 feet square, running from the ceiling of the room called B1 on the first floor out through the roof, for the purpose of airing out room B1. At the time of the fire, this air shaft was closed with two plugs made of wood and slab cork, one placed in the bottom end of the shaft and the other placed in the shaft where it came through the floor of

the attic. The only opening in the shaft in the attic had been closed perfectly and cork had been thrown up around it, so that after the plugs were put in there was no opening left between the attic and the rooms below except the elevator shaft at the extreme northeast part of the attic.

The outer wall of this elevator shaft was of glazed tile clear to the roof. There was a ladder came up by the elevator shaft, but at the time of the fire the trap door at the top of the ladder was closed.

The regranulated cork on the attic floor was a fine substance. When a person would walk through it holes would be left, so that it was rough on top. It was a by-product of cork board, which is ground down to size and sawed in pieces and the small pieces and the dust that come off are sacked up to use for granulated cork.

There was testimony offered and admitted tending to show that between 10:40 and 10:50 of the evening of October 10, 1925, appellee's train No. 888 passed west, over the tracks of appellee, and witnesses testified to observing sparks and masses of sparks being emitted from the smokestack of the engine at each exhaust, and that the wind was blowing from the southeast. There was also testimony tending to show that another engine and train passed over the tracks of appellee at about 12:30 o'clock in the mornnig of October 11th, the engine emitting sparks. There is also testimony tending to show that another train passed east over the tracks of appellee shortly after midnight of the same night, the engine emitting and puffing smoke and sparks as it passed the plant of appellant. It was the theory of appellant that these sparks or some of them passed through the slats of the louver on the south attic wall or roof, and became embedded in the debris of the birds' nests and granulated cork and caused the fire. There was no contradiction of the testimony that appellee's engines passed the plant of

appellant and were emitting sparks during the night in question and at about the hours stated. Appellee did offer testimony tending to show that the engines in question were all equipped with the most efficient and up-to-date spark arresters and that .it was free from negligence in its care and supervision in that regard. Appellee contended and offered testimony tending to show that granulated cork would not ignite or burn, and offered in the presence of the jury to make a demonstration of this fact. Appellee was permitted to offer further testimony of experiments that had been made along this line, which appellant contends were under different conditions than existed at the fire in question and constitute error. Appellant offered the testimony of the granulated cork manufacturers, coming from their plant in New Jersey, that sparks often drop into the regranulated cork and set it on fire. When this happens, according to the testimony, a little ball of fire forms around the sparks and it keeps getting larger and larger and insulates and generates its own heat. This will continue to burn until it comes in contact with some foreign material, such as paper, burlap sacks, wood and straw, and then there will be a flame of fire: ''Granulated cork catches on fire from coal cinders. It will not blaze until it comes in contact with foreign material, but it will keep burning and generating its heat until it does reach something else. Fires occur often from sparks in the places where granulated cork is manufactured.''

It was further shown by testimony submitted by appellant that the cork in this building laid and burned for weeks after the fire. There was a great deal of testimony submitted in the record, much of it of a contradictory nature. The electric plant and other machinery of appellant in the buildings was fully covered by the testimony of witnesses. A jury could have found a verdict for either party to the suit, and it is a case where the rulings upon the admission of evidence

should have been substantially correct and the instructions to the jury free from substantial error.

It is assigned as error that the witnesses Young and Toensfeldt were allowed to testify on behalf of appellee to some experiments with ground cork under conditions not the same in any particular as those existing at the time of the fire, and said that cork would not sustain combustion without the application of external heat as a result of their experiments. Professor Young used granulated cork that he obtained from the burned building a month after the fire and that had gone through fire and water and no doubt suffered chemical change. He also used Indiana coal in some of his experiments, although he admitted that Montgomery county coal, the kind used by appellee at the time of the fire, contained more sulphur and slag and made a hotter cinder.

The witness Gilbert A. Young testified for appellee, under objections, that he was the head of the School of Mechanical Engineering of Purdue University; that he had made experiments to determine the degree of heat contained by sparks emitted from locomotives, the distances they would go, and at what point they lose their vitality; that he used two lines of experiments, one, the road tests, and the other the laboratory tests, and that in the road tests he would place pans one square foot in area in five rows along the track back at different distances from the center of the track up to 250 feet. In the first row of pans he would have paraffin, in the second row he would have cotton flannel with the fuzzy side up, then the next row would be paraffin and the next cotton flannel and the next row paraffin. Then the locomotive or train would go by, with some one on the locomotive to determine the position of the cut off, and get the information relative to the steam pressure, so that the wind would be carrying the cinder toward the testing pans. After the train had passed by, they would pick

up the pans, place them in racks, and lay down new pans for the next train.

In the laboratory, he would take cinders from the front end of a locomotive and sieve them through different kinds of sieves, so that he had cinders up to a half inch across. These would be marked and he would then put them in an electric furnace, in which he maintained temperature up to 1800 degrees. The temperature would be brought up to the temperature required by the test and then he would reach in with a pair of forceps and take the crucible out and throw the cinder on paraffin or anything he was testing, and note the effect of the different sizes. This would be done first with still air and then with an artificial wind up to 30 miles an hour blowing on the cinder. He got the temperature of his cinders on the road test by using the same paraffin that he used on this test. He would take the cinder and heat it to a thousand degrees and throw it on the paraffin and note how much it melted, and then he would get a cinder that was 20 feet from the track on the road test and bring it back to the laboratory and determine its temperature by how much it melted the paraffin, and in that way would determine the temperature of the cinder that came out of the locomotive on the road test.

These and various other experiments were testified to by the same witness, without any testimony showing that the same kind of coal was used that appellee used in its engines, or that the cork and conditions were the same as prevailed in appellant's storage house on the night of the fire in question. There are other conditions that may or may not have entered into the question of the probability or possibility of the origin of the fire charged in the declaration, in a certain manner not shown by the evidence, such as the nature of the particular coal used from which the spark was emitted, the humidity of the atmosphere and its effect upon granulated cork and other condi-

tions, so that it can not be said that the experiments were made under the same identical conditions as existed at appellant's plant on the night in question.

Testimony as to the inflammability or combustibility of cork and granulated cork and its action, subjected to fire or heat, was competent testimony, and appellee contends that ''the purpose of the tests was not to determine whether cork would burn under the exact conditions that existed at the time of the fire, but to determine the inflammability of cork generally,'' and, therefore, it was not necessary that the same identical conditions should exist as were present at the fire. We cannot concur in this contention.

Appellee apparently undertook an experiment to effect a demonstration that granulated cork could not burn, and that sparks from appellee's locomotive could not have caused the fire. It was an attempt to cover the entire physical and chemical field as pertained to this fire, and brings the testimony within that class condemned in *Libby, McNeill & Libby v. Scherman,* 146 Ill. 540, and *Chicago City Ry. Co. v. Brecher,* 112 Ill. App. 106, 107. In *Libby, McNeill & Libby v. Scherman, supra,* it is said:

''The defendant called Morgenweck, its foreman, and Haddlesey, its time-keeper and paymaster, as witnesses, and sought to prove by them experiments with piles of barrels similar to the one from which the barrels fell upon the plaintiff, and from which a barrel located relatively the same as the empty barrel in question, was entirely taken out without causing the pile to fall. These witnesses were also asked whether an empty barrel located as was the one in question, could be taken out of the pile without causing it to fall or give way, or whether knocking out the head of the barrel thus situated and removing its contents would affect the stability of the pile. This evidence was excluded by the court, and an exception to such ruling was preserved by the defendant.''

The court held: "We are clearly of the opinion that experiments of that character, and their results, and inferences drawn from them by witnesses, were mere collateral matters which could have no legitimate bearing upon the issues before the jury. Besides the impossibility of showing that the conditions under which these experiments were made were in all respects identical with those existing at the time the plaintiff was injured, and the multitude of collateral issues which an attempt to prove identity of conditions would raise, the fact that one experiment had been conducted to a successful issue would have little if any tendency to show that in another case precisely like it, an accident might not happen. A thousand men may pass an impending wall with safety, or at least without injury, but the next man who attempts to pass it may be crushed by its fall. The question is not whether a pile of barrels might not stand with an empty barrel situated as was the one in this case, but whether leaving such barrel in the condition shown rendered the support of the barrels above it less secure, and that to such a degree as to constitute negligence, and whether the plaintiff's injury occurred as the result of such negligence.

"So far as these witnesses were sought to be examined as experts, it does not appear that they had any special knowledge or skill on the subject, unless it was that gained by means of the experiments which counsel attempted but was not permitted to prove. Nothing therefore is proved which tends to show that they were any better qualified to express an opinion on the subject than were any of the jurors before whom the cause was being tried. And even admitting that the subject was one for expert testimony—a proposition which may well be doubted—their answers to questions put to them calling for their opinions, would obviously have been merely a means of getting

before the jury by indirection, the results of the experiments, if not the experiments themselves.''

In *Chicago City Ry. Co. v. Brecher, supra,* the court held:

''It appears that the deceased, September 29, 1900, was riding on the front footboard of an engine which came to a crossing of appellant's track, when, by reason of the unsafe condition of such track and crossing, the weight of the engine caused them to sink down so that the footboard was caught by some portion of the track and crossing and was thereby broken and the deceased was thrown off and instantly killed. * * *

''The engine upon which Gunn was riding at the time he was killed was drawing seven loaded cars. The next morning between seven and eight o'clock, the laborers went on with the work of completing the repairs at and in the vicinity of this crossing and track. An hour later the same engine equipped with a new footboard, which is not shown to have been of the same height as was the old one, without cars attached, was run over the crossing and track. The speed of the engine upon the two occasions was not the same. There is no evidence that the temperature at midnight and in the forenoon was the same. In spite of this dissimilarity of conditions and over the repeated objections and exceptions of appellant, the results of this experiment were submitted to the jury. This action of the trial court is reversible error. Unless it be shown that all the essential conditions of the experiment are identical with those existing at the time of the accident, the results of that experiment have no legitimate bearing upon the issues before the jury, since, instead of enlightening the jury, their tendency is to confuse and to mislead them.''

The admission of the testimony set out in this case constituted error.

It is assigned as error that after the witness Young had been permitted to testify in regard to his experi-

ments in dropping cinders in a box containing regranulated cork, he testified that he could demonstrate to the jury whether cork would burn, and counsel for appellee asked him to do that. This request was repeated by counsel at different times over the objection of appellant. Under all the proofs in this case, the testimony and offer constituted reversible error.

There was some testimony in the record, submitted by appellant's witnesses, that the engines in question were not equipped with the most modern, up-to-date and efficient spark arresters in use at the time of the fire in question.

Appellant has assigned error upon the giving of certain and numerous instructions for appellee by the court. We shall consider certain of these instructions. It is provided in Cahill's St. 1927, ch. 114, ¶ 164:

"That in all actions against any person or incorporated company for the recovery of damages on account of any injury to any property, whether real or personal, occasioned by fire communicated by any locomotive engine while upon or passing along any railroad in this State, the fact that such fire was so communicated shall be taken as full *prima facie* evidence to charge with negligence the corporation, or person or persons who shall, at the time of such injury by fire, be in the use and occupation of such railroad, either as owners, lessees or mortgagees, and also those who shall at such time have the care and management of such engine."

Under this statute it has been held in *Silver v. Chicago & N. W. Ry. Co.*, 193 Ill. App. 227, 228:

"An instruction in an action against a railroad company for the destruction of property by fire, caused by sparks from a locomotive, which places the burden of proof on the plaintiff to show not only that the fire was caused by the defendant, but also that either the engine was not in a reasonably safe condition or was not managed with reasonable care and skill, de-

prives the plaintiff of the benefit of the Act of 1869 (J. & A. ¶ 8891) declaring that the fact that a fire was started by a locomotive shall be taken as full prima facie evidence to charge the defendant with negligence.''

In *American Strawboard Co. v. Chicago & A. R. Co.*, 177 Ill. 513, 519, it was held error to give the following instruction:

''The jury are further instructed, that in this action the burden of proof is upon the plaintiff to show, not only that the defendant was guilty of negligence, but that it, the plaintiff itself, was not guilty of negligence or carelessness.''

The court saying: ''It must be conceded that if the statute is applicable to the case,—and we must hold that it is,—then, when it is proved or admitted that the fire was so communicated, that is full *prima facie* evidence to charge the defendant with negligence, and the burden was on the defendant to avoid the effect of such presumed negligence by proving that the engine was at the time equipped with the best and most approved appliances to prevent the escape of fire and that the same was in good repair and the engine properly and carefully managed. (Citing authorities.) When proved or admitted that the engine set out the fire, and when proved or admitted that the engine was so equipped as required, was in good repair and carefully and skillfully managed, and the railroad company has failed in no duty, then the owner, whether in the exercise of due care for the safety of his property or not, must suffer the loss, for the company is engaged in its lawful business in a lawful way and without negligence, and the loss is *damnum absque injuria;* hence the suggestion of appellant that negligence is no longer the gist of the action is incorrect. The statute has in that respect done no more than to prescribe a rule of evidence. That rule of evidence, in its application to the real controversy of fact in this

case, placed the burden of proof on defendant,—that is, the loss having occurred by fire which it set out, to prove that it had observed all of the requirements to equip, keep in good order and to manage with skill and care its locomotive engine. To instruct the jury, then, as was done in this case, that 'in this action the burden of proof is upon the plaintiff to show  *   *   * that the defendant was guilty of negligence,' was injuriously misleading, for such burden extended no fur-- ther than the setting out of the fire, and as there was no serious controversy over that fact, the jury would most probably understand the court to mean that the plaintiff must prove, by a preponderance of the evidence, that the company was guilty of negligence in not properly equipping, repairing or managing its engine.''

In *Cleveland, C., C. & St. L. Ry. Co. v. Hornsby,* 202 Ill. 138, 140, the court held:

''The statute of this State provides that in actions of this character, 'the fact that such fire was so communicated shall be taken as full *prima facie* evidence to charge with negligence the corporation, or person or persons who shall, at the time of such injury by fire, be in the use and occupation of such railroad,' etc. (3 Starr & Cur. Stat.—2d ed.—p. 3294). Under this statute, it was only necessary for the appellee in the first place to establish a *prima facie* case of negligence against the appellant company by proving, or by introducing proof tending to show, that the fire was caused by a spark from the engine. The proof here is clear that the fire was so caused. In fact, it is conceded by counsel for the appellant company that the fire was communicated to appellee's property by a spark or sparks from the engine, attached to one of appellant's passing trains.

''When such *prima facie* case was made, the burden of proof was then cast upon the appellant company to show, either that the fire was caused by some

other agency, or that its engine was equipped with the best and most approved appliances to prevent the escape of fire, and was in good repair, and properly and skillfully handled by a competent engineer. (*First Nat. Bank v. Lake Erie and Western Railroad Co.*, 174 Ill. 36; *Baltimore and Ohio Southwestern Railway Co. v. Tripp, supra*)."

It is to be noted that in the last case cited the court holds that a *prima facie* case may be made, *"by introducing proof tending to show, that the fire was caused by a spark from the engine,"* and in *Utica Hydraulic Cement Co. v. Chicago, R. I. & P. Ry. Co.*, 193 Ill. App. 390, 392, the court held:

"Evidence of circumstances justifying an inference that a fire which consumed a building was caused by burning cinders or sparks emitted from the defendant's passing locomotive, establishes a *prima facie* case which, under the statute, casts on the defendant the burden of proving such facts as would excuse it."

Inasmuch as appellant has assigned error upon the giving, by the court, of nearly every instruction for appellee individually and upon the instructions as a series, we subjoin the 18 instructions given for appellee as follows:

"1. This case is based solely upon alleged acts of negligence of the defendant railroad company. The charge of negligence is that defendant company did not use reasonable care to keep and maintain its locomotive engines in suitable order and repair and to so operate them so that fire or sparks would not be liable to escape or be thrown therefrom to or upon the property adjacent or near to the right of way of the defendant, but that while a certain locomotive engine of defendant on the 10th day of October, 1925, at the hour of to wit: 11:30 P. M. was passing upon said railroad track in a westerly direction and that while another of said engines at the same date and same hour was passing along said railroad track in an east-

erly direction past the cold storage plant of R. A. Watson Orchards, Inc., divers sparks and brands of fire escaped and were thrown from one or both of said locomotive engines by and through the negligence and carelessness of the defendant to and upon said cold storage plant causing said property to be burned.

"Now the Court instructs you that these averments are material ones in the declaration and must be proven by a greater weight or preponderance of the evidence before the plaintiffs would be entitled to recover any damages, and the Court further instructs you that if you believe from the evidence that Plaintiffs have not proven by a preponderance of the evidence that a spark or fire from a locomotive of defendant's caused the fire, then plaintiffs cannot recover, and you are further instructed that if defendant did equip and maintain in good condition and repair its said locomotive engines with the best and most approved spark arresting devices and had said engines carefully operated by competent and skillful employes at the time in question, then the Court instructs you that plaintiffs cannot recover any damages and you should find the defendant not guilty.

"2. The fact that this case is submitted to you by the Court for your consideration and determination should not be considered by you as an intimation by the Court that defendant railroad company is or is not liable to the plaintiffs for damages.

"The question as to whether or not plaintiffs are entitled to damages from the defendant is for your determination from the evidence, guided by these instructions and the Court, in submitting the case to you for decision, does not in so doing express any opinion whatsoever as to the rights of the plaintiffs to recover damages from the defendant railroad company.

"3. If it has been established as a fact by a preponderance of the evidence, but not otherwise, that

the fire in question was communicated from a locomotive engine of defendant, then under the statute that shall be taken as full prima facie evidence to charge defendant with negligence, yet, such proof does not necessarily mean that plaintiffs would be entitled to recover damages, for, if the evidence on the part of defendant rebuts or overcomes the prima facie evidence of negligence made by plaintiffs, then plaintiffs cannot recover.

"Plaintiffs' prima facie evidence of negligence may be rebutted or overcome by evidence on behalf of defendant. Therefore, the Court instructs that, if you believe that defendant's engine, which it is claimed communicated the fire, was equipped with one of the best and most approved spark arresting devices and at the time of the fire was in good order and repair and handled in a careful manner by competent employees, then the prima facie evidence of negligence on the part of defendant is rebutted and plaintiffs can not recover damages and you should find the defendant railroad company not guilty.

"4. It is averred in plaintiffs' declaration that an engine on defendant's road passed the premises in question going in an easterly direction, at to-wit: 11:30 P. M., and one passed going in an opposite direction at the same hour on the evening of the 10th of October, A. D. 1925, and that the fire in question was started by a spark from one or both of said locomotives.

"If you find that the plaintiffs have not proven that a spark from one of the engines in question caused the fire, then you are instructed to find the defendant not guilty.

"5. The mere fact that defendant operated a railroad with locomotive engine and train running thereon near or adjacent to property of one of the plaintiffs does not create a presumption that the fire in question was communicated by an engine of defend-

ants. Whether such fire was communicated by a locomotive of defendant is a question that must be proved to be a fact by a preponderance of the evidence. If plaintiffs have failed to prove that the fire in question was communicated by a locomotive engine of defendant, then plaintiffs cannot recover and you should find defendant not guilty.

"6. When you are told by these instructions that the plaintiffs can recover, if the evidence preponderates in their favor but slightly, the Court does not mean thereby that the plaintiffs are entitled to recover upon slight evidence merely.

"Plaintiffs cannot recover on anything less than a preponderance of all the evidence in the case under the instructions of the Court.

"7. You are instructed that a railroad company is not necessarily liable for damages because it may appear that sparks or fire escaped from its locomotive and set fire to and destroyed property. Before the railroad company is liable for damages it must appear that the escape of sparks from the locomotive was due to negligence on the part of the railroad company or its servants. If it is shown by a preponderance of the evidence that fire did escape from the locomotive and did ignite property and cause it to be burned, this under the statute simply makes a full prima facie case of negligence upon the part of the railroad company, but is not conclusive evidence of negligence and a right to recover damages. The full prima facie case of negligence is rebutted if it be proven by the evidence that the locomotive in question was equipped with the best and most approved spark arresting device and that such device was at the time in good order and repair and that the locomotive was carefully managed by competent servants.

"And if you believe from the evidence in this case that defendant's locomotives in question were equipped with the best and most approved spark arresting

devices and that at the time in question they were in good order and repair and that the said locomotives were carefully managed by competent servants, then the Court instructs you that the plaintiff would not be entitled to recover any damages in this case and you should find the defendant railroad company not guilty, even though you may believe that a spark from a locomotive engine of defendant caused the fire.

"8. In determining whether or not defendant exercised reasonable care to keep and maintain its locomotive engine or engines in question in suitable order and repair and whether they were carefully operated and by careful employes, you have a right to and may take into consideration the manner in which said locomotive engines were at the time in question equipped and maintained, as to whether or not they were using on said locomotive engines the best and most approved devices for the arresting of sparks, whether the spark arresting devices were in good order and repair and whether or not said engine or engines were carefully operated by careful and competent employes.

"9. You are instructed that this suit is based wholly on alleged negligence of the defendant railroad company. The negligence, which is charged in the declaration in this case, is that the defendant at the time in question did not use reasonable care to keep and maintain certain of its locomotive engines in suitable order and repair and in failing to operate its said locomotive engines so that fire and sparks would not be liable to escape or be thrown therefrom to or upon the property adjacent or near to the right of way of the defendant.

"Now the Court instructs you, if you believe from the evidence in this case that the defendant did use reasonable care to keep and maintain its said locomotive engines in suitable order and repair by equipping and maintaining in good order said engines with the best and most approved spark arresting devices and did carefully operate said locomotives with careful

and competent employes, then the Court charges you that the acts of negligence alleged in the declaration have not been proven and the plaintiffs would not be entitled to recover any damages in this case and you should find the defendant not guilty and this should be your finding and verdict, no matter what the evidence may show or fail to show, as to how the fire originated.

"10. You are further instructed that, if the whole evidence fairly considered leaves you in doubt, so that you are left to guess or conjecture as to whether sparks from defendant's locomotive or fire of some other origin caused the damage complained of, there can be no recovery by the plaintiffs and you should find the defendant not guilty.

"11. As to the origin of the fire in question, that is, as to how it started, the Court instructs you that there is no presumption whatsoever that a spark or fire from a locomotive engine of defendant caused or communicated the fire to the property in question. The question as to how the fire originated is one that must be proved by the plaintiffs by a preponderance of the evidence and, if you believe that the plaintiffs have failed to prove by the preponderance of the evidence that a spark from one of the locomotive engines in question communicated the fire to the property in question, then the plaintiffs cannot recover and you should find the issues for the defendant.

"12. Before the plaintiffs can recover in this case they must prove by a preponderance of the evidence that the locomotive engine in question did in fact throw sparks and that such spark or sparks did in fact set fire to the property in question.

"A mere suspicion that the fire was communicated from the locomotive is not sufficient.

"The preponderance of the evidence must show the fact of the fire being communicated from the locomo-

tive engine in question or plaintiffs cannot recover any damages.

"13. The Court instructs the jury that what is meant by a preponderance of the evidence is more evidence or better evidence or the greater weight of the testimony.

"14. If you are unable to determine from the evidence how the fire in question occurred or, if you cannot arrive at a correct conclusion as to the origin of the fire without speculation or conjecture, then you should find the defendant, railroad company, not guilty; the plaintiffs can recover only in event they prove by a preponderance of the evidence that the fire originated from a spark or fire from a locomotive of defendant's.

"15. The Court instructs the jury that the declaration in this case is merely the unsworn statement of the plaintiffs' case and neither proves nor tends to prove any allegation contained in it.

"16. If you believe from the evidence in this case that the fire in question was occasioned from any cause other than from the alleged negligence on the part of the railroad company, then it is your duty to find the defendant railroad company not guilty.

"17. The 'prima facie evidence of negligence' referred to in the statutes has no reference to the proof required, relative to the origin or manner in which a fire originated.

"Under the Statute, after it has been proved that a fire was communicated by a locomotive engine then and then only is such fact to be taken as full prima facie evidence to charge with negligence the owner of the railroad operating the engine or those in charge of the engine.

"There is no presumption, however, that the fire originated from a spark or fire from a locomotive. The origin of the fire must be proved the same as any

other question of fact in the case, that is, by preponderance of the evidence.

"18. It is a part of plaintiff's case to prove as a fact by a preponderance of the evidence in what manner the fire in question originated or started, and, if the plaintiffs have not proven the cause or manner in which the fire was started, then the plaintiffs cannot recover and you should find the defendant not guilty."

In considering these instructions, appellee insists that appellant had the burden of proving facts and circumstances to show that the fire in question was set by a spark from appellee's locomotive and that such burden remained upon appellant to the end of the case. But it is insisted that appellant, under the statute, never at any time had the burden of proof as to whether or not appellee's locomotives were equipped with the best and most approved spark arresting appliances, whether they were in good repair, whether the engine was properly and skilfully handled by a competent engineer and fireman, or to overcome the testimony of appellee as to some cause of the fire by agencies other than sparks from a locomotive of appellee.

We shall point out some of the errors charged in a few of these instructions. In the first instruction, by its terms appellant was required to prove every material allegation in each count of the declaration. This was error. (*Fowler v. Cade,* 214 Ill. App. 153, 155.) The instruction places the burden upon appellant, not only to prove that the fire was caused by sparks from appellee's locomotive, but that said locomotives were not suitably equipped or properly operated. The instruction entirely ignored the provision of the statute that the fact that the fire was, or may have been, communicated by the locomotive, should be taken as full prima facie evidence that appellee was negligent. The last part of the second clause of the instruction entirely ignores the evidence.

Appellant criticises the giving of the second instruction both as to substance and its negative form. The instruction should have been limited to a determination of the facts from the evidence and under the instructions of the court.

The third instruction given practically places the burden upon appellant of proving the fact that spark from appellee's locomotive did start the fire, and that an eyewitness saw the direct communication. The statute does not contemplate any such degree of proof. It speaks merely of "the fact that such fire was so communicated shall be taken as full prima facie evidence"—the fact to be determined by inference or conjecture, based upon the statute, where not rebutted, and the courts have so held.

In the case of *Cleveland, C., C. & St. L. Ry. Co. v. Hornsby,* 202 Ill. 138, 140, it is said:

"Under this statute, it was only necessary for the appellee in the first place to establish a *prima facie* case of negligence against the appellant company by proving, or by introducing proof tending to show, that the fire was caused by a spark from the engine."

In the case of *Utica Hydraulic Cement Co. v. Chicago, R. I. & P. Ry. Co.,* 193 Ill. App. 390, 392, it is said that evidence of circumstances, justifying an inference that a fire was caused by sparks emitted from the defendant's locomotive, establishes a prima facie case, which, under the statute, casts upon the defendant the burden of proving such facts as would excuse it. The giving of the instruction was error and the same error is incorporated in other instructions given for appellee.

The giving of appellee's fourth instruction was error, as it entirely ignored the testimony of two witnesses for appellant who testified that a locomotive of appellee passed appellant's storage plant at 12:30 o'clock a. m., and of another witness who testified that an engine and train passed the warehouse about 10:40

p. m. Both engines were emitting sparks profusely, according to the testimony. The charge in the declaration, under a *videlicet*, stated the time as set out in the instruction. It does not follow under the testimony that it should be copied in an instruction. (*Collins v. Sanitary Dist. of Chicago*, 270 Ill. 111.) It was error to give the instruction, which was not cured by the giving of appellant's seventh instruction. The jury are not able to select from contradictory instructions one which correctly states the law. (*Cleveland, C., C. & St. L. Ry. Co. v. Best*, 169 Ill. 301, 309; *Gilmore v. Fuller*, 198 Ill. 130, 143; *City of Macon v. Holcomb*, 205 Ill. 643, 646; *Illinois Match Co. v. Chicago, R. I. & P. R. Co.*, 250 Ill. 396, 404; *Bald v. Nuernberger*, 267 Ill. 616, 620.)

The fifth instruction singled out particular elements of fact, being a part of the facts upon which a presumption might arise and instructed the jury that no presumption arose from the facts stated. The instruction as given has been severely condemned and was error. (*Walsh v. Moore*, 244 Ill. App. 458, 462; *Vaughn v. Director General of Railroads*, 218 Ill. App. 601; *M. H. Boals Planing Mill Co. v. Cleveland, C., C. & St. L. Ry. Co.*, 211 Ill. App. 125, 128; *West Chicago St. R. Co. v. Petters*, 196 Ill. 298, 300.)

It is pointed out that the giving of the sixth instruction was error in this case, inasmuch as appellee was relying upon an affirmative defense, citing *Burns v. Landrum*, 238 Ill. App. 191, 195; *Richelieu Hotel Co. v. International Military Encampment* Co., 140 Ill. 248, 267.

Appellant criticises the eighth instruction, inasmuch as it fails to limit the jury to the evidence and singles out certain facts and gives them undue prominence, omitting other equally pertinent facts. *Vaughn v. Director General of Railroads, supra.*

The eleventh instruction in stating to the jury, "As to the origin of the fire in question, that is, as to how

it started, the Court instructs you that there is no presumption whatsoever that a spark or fire from a locomotive engine of defendant caused or communicated the fire to the property in question," was clearly erroneous, and by it the court invaded the province of the jury and undertook to pass upon the evidence. (*Toledo, P. & W. Ry. Co. v. Parker,* 73 Ill. 526, 527; *Leiserowitz v. Fogarty,* 135 Ill. App. 609, 613.)

"Presumptions" have been defined by the Supreme Court as "inferences which common sense draws from the known course of events or from circumstances usually occurring in such cases." *Sears v. Vaughan,* 230 Ill. 572, 591.

In the case of *Ohio Bldg. Safety Vault Co. v. Industrial Board of Illinois,* 277 Ill. 96, 110, it is said:

" 'The terms "inference," "probability," "assumption" and "presumption" have substantially the same meaning and import as used in legal writings and opinions. Attempts have been made from time to time to draw distinctions between certain of these terms, but legal as well as common parlance recognizes no such refinements of meaning.' (10 R. C. L. 867, 268.)"

In instructing the jury that no inferences could be drawn from the fact that sparks were flying and being emitted from the engines in question, the court was practically instructing the jury to find for appellee.

The twelfth instruction for appellee is criticised for the reason that it refers to "the locomotive engine in question," when proofs were offered tending to show that sparks were being emitted from different engines of appellee on the night in question, any one of which might have caused the fire. The instruction directed a verdict and was otherwise confusing.

Appellant criticises the thirteenth instruction given for appellee in defining preponderance of evidence, and seems to be supported by authority in the criticism. (*Protection Life Ins. Co. v. Dill,* 91 Ill. 174, 177; *Boyer v. Broffey,* 109 Ill. App. 94, 95.)

The fourteenth instruction is criticised under the authority of *Gehrig v. Chicago & A. Ry. Co.*, 201 Ill. App. 287, 292.

The sixteenth instruction is criticised under the authority of *Cleveland, C., C. & St. L. Ry. Co. v. Hornsby*, 202 Ill. 138, 140.

The seventeenth instruction is criticised under the authority of the statute heretofore quoted, and also the cases cited—*Cleveland, C., C. & St. L. Ry. Co. v. Hornsby, supra,* and the *Utica Hydraulic Cement Co. v. Chicago, R. I. & P. Ry. Co.*, 193 Ill. App. 390, 392.

The eighteenth instruction is as follows: ''It is a part of plaintiff's case to prove as a fact by a preponderance of the evidence in what manner the fire in question originated or started, and, if the plaintiffs have not proven the cause or manner in which the fire was started, then the plaintiffs cannot recover and you should find the defendant not guilty.'' The giving of this instruction was error, inasmuch as the burden of proof under the statute was upon the defendant to show the origin of the fire, if plaintiff had made a prima facie case, which we assume plaintiff had made by the submission of said cause to a jury. Of the 18 instructions given for appellee 12 directed a verdict for appellee. This was error. (*Nelson v. Chicago City Ry. Co.*, 163 Ill. App. 98, 102; *Gehrig v. Chicago & A. R. Co.*, 201 Ill. App. 295; *Wood v. Illinois Cent. R. Co.*, 185 Ill. App. 180, 184; *Cohen v. Weinstein*, 231 Ill. App. 84, 100; *Sass v. Chicago City Ry. Co.*, 182 Ill. App. 364, 365; *Kravitz v. Chicago City Ry. Co.*, 174 Ill. App. 182, 186; *Daubach v. Drake Hotel Co.*, 243 Ill. App. 298, 303.)

Eight instructions for appellee informed the jury in substance that the plaintiff must prove as a fact, by the preponderance of the evidence, that the fire was communicated by a locomotive of the defendant. It is error to repeatedly instruct the jury on the same point and thus overemphasize it and give the matter

of fact undue prominence. *People v. Harrison*, 261 Ill. 517, 527.

The instructions were erroneous as a series and very prejudicial in particular.

It is insisted by appellant that the action having been brought for damages to real estate the circuit court of Coles county has no jurisdiction to hear the case, the cause of action having arisen in another county. It is sufficient answer to this contention to point out that this action was brought in part to recover for the loss to personal property which in no manner is a "local action," and which gave the circuit court of Coles county full jurisdiction at least to hear the cause as to any damage or loss sustained by reason of the destruction of personal property.

In the view of this court evidence was admitted and instructions given on the trial of the cause prejudicial to the appellant's cause of action to the extent that the judgment of the circuit court of Coles county should be reversed and the cause remanded for another trial, not inconsistent with the views herein expressed.

*Judgment reversed and cause remanded.*